# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-3397

Terrance D. Massie, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued September 14, 2011                    Decided December 19, 2011)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Selket N. Cottle*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Kenneth A. Walsh*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before HAGEL, LANCE, and DAVIS, *Judges*.

HAGEL, *Judge*: Terrance D. Massie appeals through counsel a May 19, 2009, Board of Veterans' Appeals (Board) decision that denied an effective date earlier than April 4, 2001, for a 100% disability rating for varicose veins.[1] Record (R.) at 3-16. Mr. Massie's Notice of Appeal was timely and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a). Although the parties did not request oral argument or identify issues that they believed required a precedential decision of the Court, the Court determined that panel consideration was necessary to determine whether a letter contained in the record that was written and signed by a VA physician constituted a "report of examination" pursuant to 38 C.F.R. § 3.157(b)(1). The Court ordered oral argument to assist it in resolving this issue. Because the letter in question was not a "report of examination," neither Mr. Massie nor the record raised the theory of entitlement to an earlier effective date that he now presents for the first time on appeal to the Court. Consequently, the Board

---

[1] As explained in more detail below, the attorney who currently represents Mr. Massie also represented him during proceedings before VA, including during a portion of the proceedings before the regional office and during his appeal to the Board.

was not obligated to consider such a theory and the Court will therefore affirm the May 2009 Board decision.

## I. FACTS

Mr. Massie served on active duty in the U.S. Army from November 1968 to August 1970.

A January 1971 VA regional office rating decision awarded Mr. Massie VA benefits for varicose veins of the left leg resulting from the surgical removal of the long saphenous vein in that leg. This condition was initially rated as 10% disabling and increased to 50% disabling effective March 1990.

On April 4, 2001, Mr. Massie filed a claim for an increased disability rating for his varicose veins. In his application, Mr. Massie indicated that he was also submitting information, including letters from his treating physicians, pertaining to his physical condition. Mr. Massie indicated that this information had previously been submitted to the Social Security Administration in connection with a claim for Social Security disability benefits. One of these letters was a May 1999 letter from Dr. Lewis J. Wesselius, a physician at the VA Medical Center in Kansas City, Missouri, that was addressed "To Whom it May Concern." R. at 1299. Dr. Wesselius indicated that he had been treating Mr. Massie for "multiple medical problems," one of which was "chronic venous insufficiency" that had "persisted in spite of prior surgical treatment with vein stripping." R. at 1299. Dr. Wesselius further stated that "[t]his problem . . . left Mr. Massie with significant pain when he [was] on his feet for any period of time." *Id.*

After several years of development, in December 2005 the regional office issued a rating decision increasing Mr. Massie's disability rating for post-operative varicose veins of the left leg from 50% to 100%, effective April 4, 2001, the date his formal claim for an increased disability rating had been filed.

In December 2006, Mr. Massie retained current counsel and informed VA that this lawyer was his authorized representative in connection with his claim for an increased disability rating. Later that month, Mr. Massie filed through counsel a Notice of Disagreement. In relevant part, the Notice of Disagreement stated:

2

Mr. Massie disagrees with the VA's decision to deny an effective date for the award of increased compensation for his service[-]connected varicose veins to 100% from April 4, 2001. Mr. Massie asserts that the VA failed to consider and apply 38 U.S.C. § 5110(b)(2) and 38 C.F.R. § 3.400(o)(2). . . . Mr. Massie was entitled to consideration of an effective date of April 4, 2000, for the increase in compensation to include consideration of the available rating of 60% as well as 100%.

Pursuant to 38 U.S.C. § 5110(b)(2) and 38 C.F.R. § 3.400(o)(2), the VA was obligated to determine whether, in the one year prior to April 4, 2001, the date of the claim for increased compensation for his service[-]connected disability, Mr. Massie's disability had increased in severity.

R. at 378.

In December 2007, Mr. Massie filed through the same counsel who now represents him a Substantive Appeal to the Board, continuing to argue only that proper application of section 5110(b)(2) and § 3.400(o)(2) entitled him to an increased disability rating effective April 4, 2000. R. at 103. He specifically cited various evidence of record, including Dr. Wesselius's May 1999 letter, arguing that "[t]his evidence made it factually ascertainable that [his] disability had increased in severity in the one year prior to April 4, 2001, as contemplated by . . . [section] 5110(b)(2) and . . . § 3.400(o)(2)," thus "requir[ing] the VA to assign an effective date of April 4, 2000." R. at 105.

In May 2009, the Board issued the decision now on appeal. The Board noted that Mr. Massie's argument on appeal was "that a higher rating [was] warranted effective April 4, 2000, one year prior to the date of claim" because Dr. Wesselius's May 1999 letter demonstrated that "it was factually ascertainable that an increase in the severity of [his] disability occurred up to one year prior to the date of claim." R. at 7, 8. Because this letter was dated *more* than one year prior to the date of Mr. Massie's formal claim, the Board interpreted his argument as being that "the 1999 letter from Dr. Wesselius . . . reflect[ed] a chronic disability picture, still applicable during the year prior to the claim," and therefore "evaluated and weighed [this evidence] in conjunction with other pertinent evidence of record." R. at 9; *see* 38 U.S.C. § 5110(b)(2) ("The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, *if application is received within one year from such date*." (emphasis added)); 38 C.F.R. § 3.400(o)(2) (2011) (providing that the effective date for an increased disability rating for a service-connected disability will be the date the claim for an increase is received or the

3

"[e]arliest date as of which it is factually ascertainable that an increase in disability had occurred *if [the] claim is received within [one] year from such date*") (emphasis added)).

In conducting this evaluation, the Board noted that there was no evidence that Dr. Wesselius even treated Mr. Massie between April 4, 2000, (the date he contended was the appropriate effective date for his increased disability rating) and April 4, 2001, (the date he filed his formal claim for an increased rating). It thus found that the probative value of Dr. Wesselius's letter was "necessarily limited by the fact that . . . it [did not] directly address[] the period at issue," and that other evidence of record directly relating to this period of time did not reflect that the criteria for an increased rating had been satisfied. R. at 10, 11. The Board therefore concluded that an effective date for the increased disability rating prior to April 4, 2001, was inappropriate.

On appeal, Mr. Massie argues for the first time–and through the same counsel who represented him before VA–that the Board erred by failing to consider whether Dr. Wesselius's May 1999 letter constituted an informal claim for an increased disability rating pursuant to 38 C.F.R. § 3.157(b)(1), thereby entitling him to an effective date as of May 1999, if not earlier.

In response, the Secretary argues that the Court should exercise its discretion and decline to entertain Mr. Massie's argument because, despite the opportunity to do so, he did not raise it below. The Secretary further contends that, even if the Court chooses to consider Mr. Massie's argument, the Board did not err in failing to discuss § 3.157(b)(1) because neither Mr. Massie nor any reasonable reading of the evidence of record raised the issue of that provision's applicability.

## II. ANALYSIS

A. Whether the Court Should Consider Mr. Massie's Argument in the First Instance

As a threshold issue, the parties disagree as to whether the Court should even entertain Mr. Massie's newly raised argument. Citing *Maggitt v. West*, 202 F.3d 1370 (Fed. Cir. 2000), the Secretary contends that the Court has discretion as to whether it will entertain arguments raised for the first time on appeal to the Court and that, in this instance, the Court should refuse to hear Mr. Massie's newly raised argument, particularly because he "is currently represented by the same counsel who represented him before the Board [and the regional office], and he has provided no justification for not raising this argument to VA." Secretary's Brief (Br.) at 5.

4

In *Maggitt*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that this Court "has jurisdiction to hear arguments presented to it in the first instance, provided it otherwise has jurisdiction over the veteran's claim," and therefore has discretion to consider such arguments in the first instance, remand them for Board consideration, or simply decline to consider them on the ground that the veteran did not exhaust his or her administrative remedies prior to appealing to the Court. 202 F.3d at 1377. In choosing between these options, "[t]he test is whether the interests of the individual weigh heavily against the institutional interests the [exhaustion of administrative remedies] doctrine exists to serve," the primary interests being "to protect agency administrative authority and to promote judicial efficiency." *Id.*

However, the Federal Circuit directed this Court to use caution in applying the exhaustion of remedies doctrine against a party such "that the party's arguments go unheard," *id.*, because, at that time, "[r]ealistic considerations . . . reduce[d] the ability of . . . veteran[s] to mount legal challenges in the regional office or at the Board." *Id.* at 1378. Specifically, the Federal Circuit expressed its concern that, because attorneys were then statutorily prohibited from collecting a fee for services provided prior to a final Board decision,[2] they were unlikely to represent veterans before VA. *See id.* (citing 38 U.S.C. § 5904(c)(1) (1994)). The Federal Circuit noted that this aspect of the VA benefits system was "not particularly 'user friendly'" and that it often resulted in poorly defined legal challenges to regional office and Board determinations prior to the submission of briefs to this Court on appeal. *Id.*

Because this Court's jurisdiction flows from the Board's decision on a particular claim, not on a particular argument or theory offered in support of that claim, *Robinson v. Peake*, 21 Vet.App. 545, 550-51 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009), and because Mr. Massie now presents a new theory in his attempt to obtain an earlier effective date rather than an entirely new claim, *see Hillyard v. Shinseki*, 24 Vet.App. 343, 355 (2011) (quoting 38 C.F.R. § 3.1(p) in defining a "claim" as "'a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement[] to a benefit,'" and *Roebuck v. Nicholson*, 20 Vet.App. 307, 313 (2006), in defining "theory" as "a 'means of establishing

_____

[2] As explained in more detail below, attorneys are now permitted to collect a fee for services rendered during proceedings before VA. *See* footnote 3, *infra*.

entitlement to a benefit for a disability,'" and noting that "'if the theories all pertain to the same benefit for the same disability, they constitute the same claim'"), this Court has jurisdiction to hear his newly raised argument.

Nevertheless, this case presents circumstances that would ordinarily lead the Court to exercise its discretion so as to invoke the exhaustion of remedies doctrine against Mr. Massie and refuse to consider his newly raised argument. *See Maggitt*, 202 F.3d at 1378 (declining "to establish an across-the-board presumption for or against invocation of the exhaustion doctrine" and explaining that this Court "is uniquely positioned to balance and decide the considerations regarding exhaustion in a particular case"). Specifically, in this case, Mr. Massie was represented by his current counsel throughout the administrative appeals process, meaning that the Federal Circuit's concerns regarding the potentially harsh result of applying the exhaustion of remedies doctrine against a party who was not represented by an attorney while before VA has no bearing upon this appeal.[3] Mr. Massie's counsel has not provided any justification for not having first presented his relatively unique theory, described in more detail below, for an earlier effective date to VA in the first instance. Indeed, at

---

[3] In general, the Federal Circuit's concern in this regard is now diminished because, in recent years, Congress has for the first time authorized attorneys to collect a reasonable fee for representation provided to veterans in proceedings before VA. *See* 38 U.S.C. § 5904(c) (permitting attorneys to collect reasonable fees for services rendered on or after the date of the filing of a Notice of Disagreement); *see also* Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. No. 109-461, 120 Stat. 3403 (Dec. 22, 2006). Further, it is worth noting that veterans appear to be gaining greater access to attorneys. For instance, the Court's own records indicate that, in October 2001, 1,941 attorneys were members of the Court's bar, with 537 of these attorneys authorizing the Court to place their names and contact information on a public list made available to veterans seeking representation. *See Renard v. D.C. Dep't of Emp't Servs.*, 673 A.2d 1274, 1276 (D.C. 1996) (explaining that "[t]he contents of a court's records are readily ascertainable facts, particularly appropriate for judicial notice" and, "generally, a court may [thus] take judicial notice of its own records" (citations omitted)). As of October 20, 2011, the Court's records indicate that 4,038 attorneys are members of the Court's bar, with 1,459 on these appearing on the public list. Similarly, in its annual report released in 2005, the Veterans Consortium Pro Bono Program indicated that 67 attorneys participated in the program. THE VETERANS CONSORTIUM PRO BONO PROGRAM, 2005 ANNUAL REPORT 3, *available for download at* http://www.vetsprobono.net/about-us/annual-reports/ (last visited Oct. 3, 2011). In that organization's 2010 annual report, it indicated that in the previous year it trained 183 attorneys, while 218 attorneys from 57 law firms and 176 private practitioners provided legal services. THE VETERANS CONSORTIUM PRO BONO PROGRAM, 2010 ANNUAL REPORT 3, *available for download at* http://www.vetsprobono.net/about-us/annual-reports/ (last visited Oct. 3, 2011). Although this program facilitates attorney representation on behalf of veterans in appeals to this Court, these increasing numbers, as well as those reflected in the Court's own records, nevertheless indicate a growing awareness and interest in veterans law among practitioners, something borne out by the more than 8,000 attorneys now accredited to practice before VA. *See* Dep't of Veterans Affairs, OGC - Accreditation Search, http://www.va.gov/ogc/apps.accreditation/index.asp (last visited Dec. 1, 2011).

oral argument, counsel attributed his failure in this regard to not having identified the theory prior to filing a Notice of Appeal with the Court.

The Court concludes that, under these circumstances, VA's interest in having a fair and full opportunity to consider all theories relevant to Mr. Massie's appeal for an earlier effective date outweighs Mr. Massie's interest in having his argument heard for the first time on appeal to this Court. Further, interests of judicial efficiency weigh in favor of invoking the exhaustion doctrine against Mr. Massie. Again, this is not a situation in which a veteran who was self-represented or represented by a veterans service organization filed a nondescript Notice of Disagreement and Substantive Appeal while before VA, expressing disagreement with a regional office determination in only the broadest terms. Rather, Mr. Massie was represented by an attorney and filed pleadings during his administrative appeal that set forth in detail the precise theory, statutes, and regulations upon which he intended to rely. His attempt on appeal to this Court to obtain a remand by presenting a different theory dependent upon different provisions of law would, if successful, only perpetuate the ever-increasing "hamster-wheel reputation of veterans law." *Coburn v. Nicholson*, 19 Vet.App. 427, 434 (2006) (Lance, J., dissenting). Interests of judicial economy demand that a represented veteran present all theories and assignments of error to VA before appealing to this Court, particularly where, as in this case, the newly raised theory involves a relatively novel application of fact to law.[4]

---

[4] The Court acknowledges that certain issues cannot be profitably raised to the Board. For instance, if on appeal a veteran for the first time challenges the constitutionality of a relevant statute, the Board could not afford the desired relief by declaring an act of Congress unconstitutional. *See Johnson v. Robison*, 415 U.S. 361, 368 (1974) (noting that the Board "follows the principle that '[a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies'" (quoting *Oestereich v. Selective Service Board*, 393 U.S. 233, 242 (1968) (Harlan, J., concurring)). Nonetheless, as this Court has previously recognized,

> [a]lthough courts generally will not require the exhaustion of administrative remedies where the administrative agency's inability to grant the relief requested renders such exhaustion futile, *Asociacion Colombiana de Exportadores de Flores v. United States*, 916 F.2d 1571, 1575 (Fed. Cir. 1990), the need for factual development to help the court resolve the constitutional issue is a proper reason for requiring exhaustion of remedies before judicial review of the constitutionality of a statute.

*Saunders v. Brown*, 4 Vet.App. 320, 326 (1993) (citing *W.E.B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 312 (1967)). Accordingly, the nature of the relief requested by a veteran on appeal to this Court, the Board's ability to provide such relief, and the need for further factual development of the record are additional factors for the Court's consideration when it exercises its discretion under *Maggitt*. *See Maggitt*, 202 F.3d at 1378.

B. The *Robinson* Decisions

As outlined above, the Court would ordinarily exercise its discretion under *Maggitt* and decline to entertain Mr. Massie's newly raised argument. However, the Court notes that Mr. Massie asserts that the Court *must* consider his newly raised theory of entitlement to an earlier effective date because, to the extent this theory was reasonably raised by the record before the agency, the Board itself erred in not considering it sua sponte. Reply Br. at 4-6. He further argues that his representation by counsel below is of no import to the issue of whether his newly raised argument should be considered by this Court for the first time on appeal. Mr. Massie's argument is premised on this Court's decision in *Robinson v. Peake*, 21 Vet.App. 545 (2008), and, more on point, the Federal Circuit's affirmance of that decision in *Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).

*Robinson* also dealt with a situation in which an appellant raised a new theory of entitlement for the first time on appeal to the Court. 21 Vet.App. at 548. Citing *Maggitt*, this Court initially determined that it had jurisdiction over the underlying claim that related to the newly presented argument and then examined the issue of exhaustion of remedies. *Id.* at 550-51. In addressing this issue, the Court noted that, "by regulation, the Board is required to construe an appellant's arguments 'in a liberal manner for purposes of determining whether they raise issues on appeal,'" and that the Board is therefore required to consider all issues raised either by the appellant or by the evidence of record. *Id.* at 552 (quoting 38 C.F.R. § 20.202 (2006)). The Court clarified, however, that this "does not require the Board to assume the impossible task of inventing and rejecting every conceivable argument in order to produce a valid decision." *Id.* at 553. Instead, "[t]he Board commits error only in failing to discuss a theory of entitlement that was raised either by the appellant or by the evidence of record." *Id.* "The question of the precise location of the line between the issues fairly raised by the appellant's pleadings and the record and those that are not must be based on the record in the case at hand; therefore, it is an essentially factual question." *Id.* In drawing this line, the Court recently clarified that, although a veteran's claim must always be liberally construed by VA, "representation [by an attorney] may be a factor in determining the *degree* to which the pleading is liberally construed." *Cogburn v. Shinseki*, 24 Vet.App. 205, 213 (2010) (emphasis added); *see also Robinson*, 21 Vet.App. at 554 (explaining that the Board may assume that "an experienced attorney in veteran's law[] says what he means and means what he says"). Ultimately, the Court in *Robinson* concluded

that the theory of entitlement offered by the appellant for the first time on appeal had not been raised to the Board by either the appellant or the record, meaning that the Board did not err by failing to consider it. 21 Vet.App. at 554-56.

On appeal, the Federal Circuit affirmed the Court's decision. The Federal Circuit held that once a "basic issue" related to the claim that is before the Board has been expressly raised (in *Robinson*, whether the veteran was entitled to service connection for a disability on a direct basis), the Board is obligated to consider other theories that relate to that issue (in *Robinson*, whether service connection could be established on a secondary basis), so long as such alternative theories are reasonably raised by the record. *Robinson*, 557 F.3d at 1362. However, the Federal Circuit clarified that "[w]here a fully developed record is presented to the Board with no evidentiary support for a particular theory of recovery, there is no reason for the Board to address or consider such a theory." *Id.* at 1361. Accordingly, if the Board fails to consider and adjudicate an argument or theory "reasonably raised by the record," the Federal Circuit's *Robinson* holds that the Board commits error requiring remand. *Id.* at 1362. The Federal Circuit also held that, in assessing which arguments or theories are reasonably raised by the record, the Board must afford a liberal reading to the party's pleadings and documents "regardless of whether the claimant is represented by an attorney." *Id.* at 1360.

Although the Federal Circuit acknowledged that this Court characterized the question before it "as one of 'issue exhaustion,'" *id.* at 1358 (quoting *Robinson*, 21 Vet.App. at 553), it provided no further discussion pertaining to the exhaustion of remedies doctrine or its earlier decision in *Maggitt*, which expressly states that this Court has discretion as to whether it will give any consideration to arguments first raised on appeal. Given the resulting uncertainty regarding whether the Court truly maintains such discretion or must instead always engage in the type of "reasonably raised by the record" analysis described in the *Robinson* decisions, the Court, out of an abundance of caution, will address Mr. Massie's assertion that, in this case, his newly raised theory for an earlier effective date was raised by the record before the agency and that the Board erred in failing to consider it sua sponte.

9

C. *Robinson* Analysis

Here, the *claim* that Mr. Massie appealed to the Board was entitlement to an increased disability rating for service-connected varicose veins. *See Hillyard*, 24 Vet.App. at 355. Mr. Massie limited his appeal to the Board to one *element* of that claim, namely the effective date assigned for the increase in disability compensation that was awarded. *See id.* (quoting *Black's Law Dictionary* at 597 in defining an "element" of a claim as "'[a] constituent part of a claim that must be proved for the claim to succeed'"). The Board's decision now on appeal made a determination related to this element of the claim and Mr. Massie now appeals that decision to the Court. Although he presents a new *theory* in arguing for entitlement to an earlier effective date, *see id.*, as noted above, this Court derives its jurisdiction from the Board's decision on a particular claim, even if the decision pertains to only one argument or theory offered in support of that claim.[5] *See Robinson*, 21 Vet.App. at 550-51. Accordingly, the Court has jurisdiction over Mr. Massie's claim and must now assess whether the Board erred in failing to consider the theory Mr. Massie now advances.

Initially, the Court notes that, in both his Notice of Disagreement and his Substantive Appeal to the Board, Mr. Massie raised the "basic issue" of whether he was entitled to an earlier effective date for an increase in his disability compensation that had previously been awarded for his service-

---

[5] The Court acknowledges that when, unlike here, an appellant *does* expressly present two theories of entitlement to a particular benefit to the Board or, alternatively, the Board recognizes a second theory of entitlement and considers it sua sponte, the Board may bifurcate the distinct theories for purposes of adjudication, deciding one and remanding the other for further development. *See, e.g., Tyrues v. Shinseki*, 23 Vet.App. 166, 169 (2009), *aff'd*, 631 F.3d 1380 (Fed. Cir. 2011), *vacated and remanded*, 132 S. Ct. 75 (2011). In such cases, this Court has held that a final Board decision on the claim regarding one theory is immediately appealable to this Court, even where the portion of the claim involving the separate theory remains before the regional office on remand from the Board. *Id.* at 176 (concluding "that a final Board decision denying VA disability compensation based upon direct service connection, while the consideration of benefits based upon presumptive service connection is still under adjudication, constitutes a final decision subject to separate appeal to the Court"). At least in part, the rationale for this rule is that a veteran ought not be forced to wait for VA to fully adjudicate the remaining theory of entitlement, a process that can take many years, if he or she believes the finally denied theory of entitlement to the desired benefit is meritorious. *Id.* (explaining that "[i]n meritorious cases where the Board denies benefits based on a particular issue with distinct criteria and remands for further adjudication another issue of establishing entitlement to benefits, a veteran might otherwise have to wait years for resolution and possibly benefits to which he or she is entitled").

However, the type of situation at issue in cases like *Tyrues* is distinct from that at issue in cases like this one, *Maggitt*, and *Robinson*, where the veteran presents to the Board only *one* theory of entitlement to a particular benefit and the Board issues a final decision denying that benefit without considering any other theories sua sponte. As noted above, in such situations, the Court has jurisdiction to consider alternative theories raised by the veteran for the first time on appeal because, ultimately, the Court's jurisdiction flows from final Board decisions with respect to the benefit sought. *See Robinson*, 21 Vet.App. at 550-51.

connected varicose veins. However, neither his Notice of Disagreement nor his Substantive Appeal suggested in any way that his argument for an earlier effective date was premised on a theory that Dr. Wesselius's May 1999 letter constituted an informal claim for an increased disability rating pursuant to § 3.157(b)(1). Indeed, that regulation was not cited in either document and the precise theory raised in presenting his claim for increased disability compensation was that proper application of section 5110(b)(2)[6] and § 3.400(o)(2)[7] entitled him to an effective date of April 4, 2000, as opposed to the date of Dr. Wesselius's letter, May 1999.

Further, Mr. Massie was then represented by the same attorney who now acts as his counsel in the instant appeal. Thus, in interpreting Mr. Massie's pleadings, the Board, although required to provide a liberal reading, was entitled to assume that the arguments presented by Mr. Massie were limited for whatever reason under the advice of counsel and that those were the theories upon which he intended to rely. *See Cogburn*, 24 Vet.App. at 213. Regardless, even pursuant to a very liberal reading of these documents, there is no indication that, while before the Board, Mr. Massie intended to rely on the theory he now presents, and the Court thus concludes that he did not raise his § 3.157(b)(1) theory to the Board. Indeed, and as described above, on appeal Mr. Massie concedes that he did not explicitly raise this theory to the Board. It follows that the Board only erred in not considering and discussing such a theory if it was raised by the record.

To evaluate this question, the Court must first discuss the nature of § 3.157(b)(1) and its place in the statutory and regulatory scheme that governs the establishment of effective dates for awards of increased disability compensation.

### D. Effective Dates for Increased Disability Compensation

As a general matter, "the effective date of an award based on . . . a claim for increase[] of compensation . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a). There are statutory and regulatory

---

[6] 38 U.S.C. § 5110(b)(2) provides: "The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date."

[7] 38 C.F.R. § 3.400(o)(2) provides that the effective date for an increase in disability compensation shall be the "[e]arliest date as of which it is factually ascertainable that an increase in disability had occurred if claim is received within [one] year from such date otherwise, date of receipt of claim."

exceptions to this general rule, however. For instance, section 5110(b)(2) provides that "[t]he effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date." *See also* 38 C.F.R. § 3.400(o)(2) (implementing section 5110(b)(2)).

Relevant to this appeal is § 3.157(b), which provides in pertinent part:

> Once a formal claim for . . . compensation has been allowed . . . receipt of one of the following will be accepted as an informal claim for increased benefits . . . . (1) *Report of examination or hospitalization by Department of Veterans Affairs or uniformed services*. The date of outpatient or hospital examination . . . will be accepted as the date of receipt of a claim. . . . The provisions of this paragraph apply only when such reports relate to examination or treatment of a disability for which service-connection has previously been established . . . .

Thus, this provision "provides that an informal claim for benefits 'will' be initiated by a report of examination or hospitalization for previously established service-connected disabilities." *Norris v. West*, 12 Vet.App. 413, 417 (1999).[8]

It is self-evident that the purpose of § 3.157(b)(1) is to avoid requiring a veteran to file a formal claim for an increased disability rating where the veteran's disability is already service connected and the findings of a VA report of examination or hospitalization demonstrate that the disability has worsened. Further, because this provision provides that "[t]he date of outpatient or hospital examination . . . will be accepted as the date of receipt of a claim," § 3.157(b)(1) operates in conjunction with section 5110(a) to entitle such a veteran to an effective date for any increase in compensation as of the date of the examination (or, pursuant to section 5110(b)(2), up to one year prior thereto, should the examination report or other evidence demonstrate that the increase in disability was first ascertainable within that period).

Here, Mr. Massie's newly stated theory is that Dr. Wesselius's May 1999 letter was a "report of examination," as contemplated by § 3.157(b)(1), and that that provision therefore operated to

---

[8] The Court notes that the Veterans Benefits Administration and the Veterans Health Administration, although both within the Department of Veterans Affairs, are separate administrative organizations. Thus, to be clear, it is only after the Veterans Benefits Administration has received a report of examination or hospitalization from the Veterans Health Administration that it is required to treat the report as an informal claim for an increase in disability compensation and initiate the adjudicative process. Section 3.157(b)(1) merely requires that, once received, the regional office will recognize "[t]he date of outpatient or hospital examination" as the date that the informal claim was filed.

transform the letter into an informal claim for an increased disability rating, potentially entitling him to an effective date sometime between May 1998 and May 1999.

Neither party has identified in § 3.157 or in any other statute or regulation a specific definition for the term "report of examination," nor has the Court's own search of these sources unearthed such a definition. Indeed, the sole reason panel consideration is necessary in this case is that the issue of what qualifies as a report of examination is vital to resolution of this appeal and VA has failed to promulgate a regulation clearly defining this term. VA's failure to specifically define this term is troublesome in light of the myriad records generated by VA medical personnel who provide treatment to veterans for service-connected conditions on a daily basis.

At oral argument, the Court raised the issue of whether certain provisions of the Veterans Benefits Administration *Adjudication Procedures Manual* (M21-1MR) are intended to describe the type of VA medical record that qualifies as a "report of examination." In particular, under the heading "Reviewing Department of Veterans Affairs . . . Examination Reports," one portion of the M21-1MR provides:

> The examination report must include
>
> - an up-to-date, brief, medical and industrial history from the date of discharge or last examination
> - a record of subjective complaints
> - a complete description of objective findings, stated in concrete terms
> - a diagnosis for each described condition[]
> - answer(s) to any question specifically included in the examination request
> - opinions specifically requested in the exam request
> - a diagnosis or notation that a chronic disease or disability was ruled out for each disability, complaint, or symptom listed on the examination request, and
> - the clinical findings required by the rating schedule for the evaluation of the specific disability being claimed. (For example, if a joint is being examined, the range of motion in degrees should be noted as part of the examination. If a cardiovascular condition is being examined, the metabolic equivalent expanded before fatigue, chest pain, and so on, result should be expressed.)

M21-1MR, pt. III, subpt. iv, ch. 3, sec. D(f).

In response to the Court's inquiry, counsel for the Secretary stated that this provision is intended to assist VA adjudicators in determining what constitutes a sufficient report of examination for compensation and pension purposes, but conceded that a particular VA medical record may still

qualify as a "report of examination" under § 3.157(b)(1) even if it is not as detailed as required by this M21-1MR provision. The Court agrees that the type of VA medical record contemplated by § 3.157(b)(1) certainly could be less detailed than that described by the relevant provision of the M21-1MR. Nevertheless, in the absence of a precise regulatory definition, this provision at least provides some helpful indication of the type of information typically contained in a "report of examination" that the Court may look to in the future when faced with similar questions.

In the present case, even without the assistance of the M21-1MR provision detailed above, the Court concludes that Mr. Massie's argument is not persuasive because Dr. Wesselius's May 1999 letter could not possibly qualify as a report of examination under § 3.157(b)(1). The plain language of the term "report of examination" necessarily implies that the medical record in question must describe the results of a specific, particular examination. *See Frederick v. Shinseki*, 24 Vet.App. 335, 338 (2011) (explaining that any analysis of the meaning of statutory or regulatory language must begin with the plain meaning of the language). Here, however, it is apparent that Dr. Wesselius's May 1999 letter did not relate to a specific VA medical examination. In the letter, Dr. Wesselius identified himself as the VA physician "who ha[d] been caring for Mr. Massie . . . since approximately 1987." R. at 1299. The letter's only reference to Mr. Massie's varicose veins condition was to note that "[t]he venous insufficiency ha[d] persisted in spite of prior surgical treatment with vein stripping," and that "[t]his problem . . . left Mr. Massie with significant pain when he [was] on his feet for any period of time." R. at 1299. Thus, this letter was not generated in connection with any particular VA medical examination; rather, as the record reveals, it was generated in connection with Mr. Massie's claim for Social Security disability benefits that was pending at the time it was written. Similarly, the letter did not indicate the findings of or treatment provided during a specific VA medical examination, the date of which could possibly serve as the date of an informal claim for increased disability compensation; rather, the letter presented a very short summation of Mr. Massie's general condition, as Dr. Wesselius had observed it over an approximately 12-year period. Simply put, the letter did not relate to a specific, identifiable outpatient or hospital examination and therefore did not qualify as a "report of examination," as contemplated by § 3.157(b)(1).

14

Further, Dr. Wesselius's letter does not suggest that Mr. Massie's condition had in any way worsened. Although the language of § 3.157(b)(1) does not expressly require that a report of examination or hospitalization indicate that the veteran's service-connected disability worsened since the time it was last evaluated, any interpretation of § 3.157(b)(1) that does not include such a requirement would produce an absurd result. *See Timex V.I. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) (holding that a statutory or regulatory construction "that causes absurd results is to be avoided if at all possible" (citing *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940))). Without such a requirement, every medical record generated by the Veterans Health Administration and received by VA that could possibly be construed as a report of examination would trigger the provisions of § 3.157(b)(1). This would unnecessarily burden VA by requiring it to treat every such medical record as an informal claim for an increased disability rating, even where a particular medical record shows no change in the veteran's condition.

Because, for the reasons outlined above, § 3.157(b)(1) was not implicated by Dr. Wesselius's May 1999 letter or any other aspect of the record as it has been presented to the Court, the Court concludes that the Board did not err in failing to discuss the theory now expressly raised by Mr. Massie in the first instance. *See Robinson*, 557 F.3d at 1361 ("Where a fully developed record is presented to the Board with no evidentiary support for a particular theory of recovery, there is no reason for the Board to address or consider such a theory."); *Robinson*, 21 Vet.App. at 553 ("The Board commits error only in failing to discuss a theory of entitlement that was raised either by the appellant or by the evidence of record."). Accordingly, the Court will affirm the Board's May 2009 decision.

## E. Other Matters

Since the Federal Circuit's decision in *Robinson*, the Court has witnessed an increase in the number of cases in which the appellant presents a new theory or argument that was not explicitly raised to VA, even in cases such as this one in which the appellant was represented by an attorney throughout the administrative process. Invariably, as is the case here, the appellant will cite the Federal Circuit's decision in *Robinson* for the proposition that the Board erred by failing to consider and adjudicate the particular issue, theory, or argument that was purportedly "reasonably raised by the record," but not expressly presented to VA by the appellant. To the extent that this Court no

longer has discretion under *Maggitt* to simply refuse to entertain such newly raised theories or arguments due to the represented appellant's failure to present them below—regardless of whether the theory was reasonably raised by the record—the Court is troubled that the current system provides very little incentive for an attorney practicing before VA to present all available arguments to the agency in one comprehensive appeal to the Board where veterans' claims can be resolved in a timely manner.

Last year 62% of the cases decided by the Court resulted in either a reversal or a remand; of these, 86% resulted in the payment of fees and expenses to lawyers by the United States under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). *See* U.S. COURT OF APPEALS FOR VETERANS CLAIMS, ANNUAL REPORT FOR FISCAL YEAR 2010, *available for download at* http://www.uscourts.cavc.gov/annual_report/ (last visited Sept. 30, 2011).[9] In this way, the more times a lawyer gets a case to this Court, the more money the lawyer may make. This is particularly true for the unscrupulous or complacent attorney who waits to present a potentially meritorious argument or theory until he or she is before the Court, in that, in addition to collecting EAJA fees resulting from a Court remand, he may then collect a reasonable fee—often paid from a veteran's benefits—for representation provided during proceedings before VA. By this, we do not intend to imply that such is often the *intention* of lawyers, as they are obligated to continually and vigorously represent their clients.[10] However, because such a large percentage of successful appeals results in the payment of fees under the EAJA, any system that *requires* the Court to remand a claim because a theory or argument was reasonably raised by the record before the agency but not explicitly by the appellant will result, in many cases, in lawyers collecting fees when attentive representation below

---

[9] Specifically, of the 4,959 appeals filed with the Court in fiscal year 2010, 1,670 resulted in a remand, 560 resulted in the Board decision being reversed or vacated and remanded in whole or in part, and 832 resulted in a portion of the Board decision being affirmed or dismissed in part and the remainder reversed or vacated and remanded. Thus, 3,062 of the appeals filed with the Court, or 62%, resulted in a favorable or partially favorable disposition for the appellant. Of the 2,652 EAJA applications that were filed in connection with these successful appeals, the vast majority, 2,627, were granted, at least in part. Accordingly, approximately 86% of successful or partially successful appeals to the Court resulted in an award of fees and costs pursuant to the EAJA.

[10] Indeed, the observations contained in this section are not intended to reflect on Mr. Massie's current counsel, but are set forth as the result of the Court's more general concerns regarding difficulties encountered when argument is presented for the first time on appeal to this Court by veterans who were represented by an attorney during proceedings before VA.

16

would have led to the presentation and resolution of all issues at an earlier stage of the proceedings.[11] Any monetary incentive for attorneys who represent veterans before VA should be oil for the gears of the system, not sand in the works. Congress may wish to consider an explicit exception to EAJA for cases where the appellant was represented below and obtains a remand based upon the Board's failure to address an issue that counsel failed to raise.[12] Such a change would clearly align attorneys' financial incentives with the best interests of veterans.

## III. CONCLUSION

Upon consideration of the foregoing, the May 19, 2009, Board decision is AFFIRMED.

---

[11] It also raises the specter that unscrupulous counsel might seek to prolong matters with a low-effort appeal and statistically likely remand from the Court so as to increase the size of the back award from which a contingency fee would be collected. Even if such motives are unlikely to be true, the mere appearance of such impropriety feeds public sentiment against the profession.

[12] The Court has not yet had reason to consider whether there are "special circumstances [that] make an award unjust" under the EAJA. 28 U.S.C. § 2412(d)(1)(A). Nor has the Court had cause to consider whether a reduction or denial of fees requested pursuant to the EAJA would be appropriate in instances in which an attorney who represented a veteran before VA first presents, without justification, a potentially meritorious theory or argument on appeal to this Court. *See* 28 U.S.C. § 2412(d)(1)(C) ("The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.").