﻿Citation Nr: AXXXXXXXX
Decision Date: 02/26/21 Archive Date: 02/26/21

DOCKET NO. 190925-33405
DATE: February 26, 2021

ORDER

Service connection for sleep apnea is denied. 

An effective date prior to July 3, 2018, for the assignment of a 40 percent rating for bilateral hearing loss is denied.

A rating in excess of 40 percent prior to February 16, 2019, and in excess of 50 percent thereafter for bilateral hearing loss is denied.

FINDINGS OF FACT

1. Sleep apnea is not shown to be causally or etiologically related to any disease, injury, or incident during military service.

2. VA received the Veteran’s claim for an increased rating for his bilateral hearing loss on July 3, 2018, and it is not factually ascertainable that such disability increased in severity so as to warrant a 40 rating within a year prior to the receipt of the claim.

3. For the appeal period prior to February 16, 2019, the Veteran had no worse than Level VII hearing in the right ear and Level VII hearing in the left ear. 

4. Since February 16, 2019, the Veteran had no worse hearing than Level VIII hearing in the right ear and Level VIII hearing in the left ear. 

CONCLUSIONS OF LAW

1. The criteria for service connection for sleep apnea have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303. 

2. The criteria for an effective date prior to July 3, 2018, for the assignment of a 40 percent rating for bilateral hearing loss have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

3. The criteria for a rating in excess of 40 percent prior to February 16, 2019, and in excess of 50 percent thereafter for bilateral hearing loss have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.85, 4.86, Diagnostic Code (DC) 6100.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from December 1977 to April 1978, and May 2004 to May 2005. This case comes before the Board of Veterans’ Appeals (Board) on appeal from an August 2018 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO). The Veteran filed a notice of disagreement (NOD) in December 2018 and a statement of the case (SOC) was issued in September 2019. Later the same month, the Veteran withdrew his legacy appeal and opted into the modernized appeals system known as the Appeals Modernization Act (AMA), by submitting a Decision Review Request: Board Appeal (Notice of Disagreement) (VA Form 10182). 38 C.F.R. § 3.2400. In such election, he selected the evidence submission lane. Consequently, the Board’s review is limited to the evidence of record at the time of the issuance of the statement of the case on September 23, 2019, and evidence received within 90 days of the receipt of his VA Form 10182 on September 25, 2019 (i.e., December 25, 2019).

Under the AMA, the Board may not consider any evidence that was added to the claims file during a period of time when new evidence was not allowed. 38 C.F.R. § 20.300. In this case, for example, the Veteran submitted additional medical evidence in March 2020. He also submitted statements from himself and his wife in January 2020. Because this evidence was submitted after December 25, 2019, the Board cannot consider it. The Veteran is advised that he may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filling a Supplemental Claim are included with this decision. 

1. Entitlement to service connection for sleep apnea.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff’d, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran contends that sleep apnea had its onset in service and, thus, service connection for such disorder is warranted. In this regard, he submitted a November 2019 buddy statement from his fellow serviceman, MR, attesting to his symptoms. Specifically, MR, reported that, while stationed in Guantanamo Bay, he and the Veteran stayed in old barracks for about four weeks. The barracks were intended for 15 soldiers, but about 30 soldiers stayed there in very close quarters. The environment was dusty, and no one got quality sleep. MR further stated that the Veteran snored a lot and complained about fatigue during the day. They moved into more comfortable new barracks, but the Veteran continued to snore. 

As an initial matter, the Board finds that the competent evidence of record confirms that the Veteran has a current diagnosis of sleep apnea, as shown by his VA treatment records. For example, a May 2018 Sleep Medicine Consult contains the results of a sleep study with a diagnosis of obstructive sleep apnea. 

The Veteran’s service treatment records (STRs) are silent for any complaint, diagnosis, or treatment of sleep apnea or sleep-related problems during the Veteran’s military service. In the Veteran’s Reports of Medical History from his periods of active service, he reported that he had not experienced nose or throat trouble, asthma, shortness of breath, or frequent trouble sleeping. In the Reports of Medical Examination from the Veteran’s active service, the examiners marked the condition of the Veteran’s nose, sinuses, mouth, throat, lungs, and chest as normal. 

A March 2005 Post-Deployment Medical Assessment mentioned that the Veteran had been exposed to vehicle or truck exhaust fumes, sand, and dust. However, the Veteran reported that he had not experienced any symptoms of difficulty breathing or still feeling tired after sleeping during this deployment. 

There is also no complaint, diagnosis, or treatment of sleep apnea from the years immediately following the Veteran’s periods of active service. 

In this regard, post-service treatment records reflect that, in January 2016, the Veteran and his wife reported that the Veteran snored at night, and this had gotten progressively worse. He further reported experiencing daytime hypersomnolence, especially if he was not working. There was also sometimes interruption of his breathing, though this was very short-lived. In a July 2017 private treatment record, the Veteran reported that he had exhibited snoring and disordered breathing at times during the nighttime for quite a while. He denied any specific history of hypersomnolence during the day, but he stated that he did feel tired. In a May 2018 VA Primary Care Initial Evaluation Note, the Veteran complained of fatigue, loud snoring, and falling asleep frequently. In a May 2018 Sleep Medicine Consult, the Veteran reported that he snored and stopped breathing, and he opined that he had the same problem in the military. The Board notes that, the Veteran first underwent a sleep study in May 2018, at which time he was diagnosed with obstructive sleep apnea. He was given a CPAP machine that greatly improved his sleep-related problems. Subsequent records reflect complaints and treatment for sleep apnea; however, none of his treating physicians have linked such to any instance of his active service. 

The Board has considered the Veteran’s assertions as to the onset and etiology of his sleep apnea; however, as a lay person, he is not competent to offer an opinion relating his sleep apnea to any instance of his military service. Specifically, the etiology of sleep apnea involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship and, thus, may not be competently addressed by lay statements. Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). 

The Board notes that the Veteran has not been provided with a VA medical examination and/or opinion regarding his claim for service connection for sleep apnea; however, the Board finds that such is not necessary in the instant case. In this regard, as indicated previously, there is no indication that his claimed disorder is related to his military service. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). Here, the United States Court of Appeal for Veterans Claims has held that VA is not required to provide a medical examination when there is not credible evidence of an event, injury, or disease in service. See Bardwell v. Shinseki, 24 Vet. App. 36 (2010). Additionally, a mere conclusory generalized lay statement that service event or illness caused the claimant’s current condition is insufficient to require the Secretary to provide an examination. See Waters v. Shinseki, 601 F.3d 1274, 1278 (2010). Therefore, the Board finds that a VA examination and/or opinion is not necessary to decide the claim. 

Consequently, the Board finds that the Veteran’s sleep apnea is not shown to be causally or etiologically related to any disease, injury, or incident during service. Therefore, service connection for such disorder is not warranted. In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran’s claim for service connection for sleep apnea. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, supra. 

2. Entitlement to an effective date prior to July 3, 2018, for the assignment of a 40 percent rating for bilateral hearing loss.

The law pertaining to the effective date of a VA claim for increase in disability mandates that, unless specifically provided otherwise, the effective date for the increase shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of the application therefor. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. Such also specifically provide that the effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if any application is received within one year from such date. 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(o). If the increase became ascertainable more than one year prior to the date of receipt of the claim, then the proper effective date would be the date of claim. In a case where the increase became ascertainable after the filing of the claim, then the effective date would be the date of increase. See generally Harper v. Brown, 10 Vet. App. 125 (1997). 

According to 38 C.F.R. § 3.157(b), once a claim for compensation has been allowed, receipt of a VA outpatient or hospital examination or admission to a VA hospital can be accepted as an informal claim for increased benefits. See Servello at 199. The date on the VA outpatient or hospital examination will be accepted as the date of claim. 38 C.F.R. § 3.157(b). When the evidence is from a private physician, the date of receipt of such evidence will be accepted as the date of receipt of an informal claim. 38 C.F.R. § 3.157(b)(2). 

A “report of examination or hospitalization” under § 3.157(b) should “indicate that [a] veteran’s service-connected disability [has] worsened since the time it was last evaluated.” Massie v. Shinseki, 25 Vet. App. 123, 134 (2011). Moreover, the term “report of examination” under § 3.157(b) “implies that the medical record in question must describe the results of a specific, particular examination.” A letter may qualify if it, for instance, was “generated in connection with any particular VA medical examination” rather than, for example, a “claim for Social Security disability benefits that was pending at the time it was written.” Massie, 25 Vet. App. at 133. Other considerations include whether the letter relates “the findings of or treatment provided during a specific VA medical examination, the date of which could possibly serve as the date of an informal claim for increased disability compensation,” rather than “present[ing] a very short summation of [the veteran’s general condition, as [the physician] had observed it over” time. Id. 

In the instant case, VA received the Veteran’s current claim for an increased rating for his bilateral hearing loss on July 3, 2018. Upon a review of the record, there is no documentation reflecting a formal or informal claim, to include under the provisions of 38 C.F.R. § 3.157(b), after the final February 2015 rating decision awarding service connection with a noncompensable rating for such disability and July 3, 2018. Consequently, the remaining inquiry is whether it is factually ascertainable that the Veteran’s bilateral hearing loss increased in severity so as to warrant a 40 percent rating within the year prior to the receipt of the July 3, 2018, claim. 

In this regard, the Veteran’s bilateral hearing loss is evaluated based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination testing together with the average hearing threshold level, in decibels (dB) as measured by pure tone audiometric tests in the frequencies 1000, 2000, 3000 and 4000 Hertz (Hz). 38 C.F.R. § 4.85, DC 6100. The assignment of a schedular disability evaluation for hearing impairment is a purely mechanical application of the schedular rating criteria under 38 C.F.R. §§ 4.85 and 4.86, DC 6100. 

A review of VA treatment records dated from February 2015 to July 3, 2018, reflects that the Veteran attended an individual hearing aid orientation. Such further reflect the Veteran’s complaints of slow progressive-type hearing problems and difficulty with hearing speech. The Veteran underwent audiology testing in April 2018; however, his otoacoustic emissions and pure tone thresholds were not in agreement. A May 2018 VA treatment record indicates that there were no changes in the Veteran’s hearing or health reported since his April 2018 visit. Here, the Veteran was slightly more consistent with his response to audiology testing; however, he had a difficult time with word discrimination in both ears and such results were not reported. Accordingly, there is no evidence of record demonstrating that the Veteran met the criteria for a 40 percent rating for bilateral hearing loss between February 13, 2015, and July 3, 2018. Therefore, it is not factually ascertainable that the Veteran’s bilateral hearing loss increased in severity so as to warrant a 40 percent rating within the year prior to the receipt of the July 3, 2018, claim. Thus, an earlier effective date for the assignment of a 40 percent rating for the Veteran’s bilateral hearing loss is not warranted. 

3. Entitlement to a rating excess of 40 percent prior to February 16, 2019, and in excess of 50 percent thereafter for bilateral hearing loss. 

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2. All reasonable doubt will be resolved in the claimant’s favor. 38 C.F.R. § 4.3. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

Separate ratings can be assigned for separate periods based on the facts found - a practice known as “staged” ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Staged ratings are appropriate whenever the factual findings show distinct periods where the service-connected disability exhibits symptoms that would warrant different ratings. Id. 

By way of background, in a November 2018 rating decision, the RO awarded an increased rating of 40 percent for the Veteran’s bilateral hearing loss, effective September 4, 2018. Thereafter, in a September 2019 rating decision and SOC, the RO found that the effective date of September 4, 2018, was clearly and unmistakably erroneous; and the effective date was changed to July 3, 2018, based on the continuously pursued claim. Additionally, the RO awarded an increased rating of 50 percent for the Veteran’s bilateral hearing loss, effective February 16, 2019. 

The appeal period before the Board begins on July 3, 2018, the date VA received the Veteran’s claim for an increased rating for his bilateral hearing loss, plus the one-year look back period. Gaston v. Shinseki, 605 F.3d 979, 982 (Fed. Cir. 2010). Such disability is rated as 40 percent disabling for the appeal period prior to February 16, 2019, and 50 percent disabling thereafter pursuant to 38 C.F.R. § 4.85, DC 6100. 

In this regard, ratings of hearing loss range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of speech discrimination tests combined with the average hearing threshold levels as measured by pure tone audiometry tests in the frequencies 1000, 2000, 3000, and 4000 cycles per second. To rate the degree of disability for service-connected hearing loss, the Rating Schedule has established eleven auditory acuity levels, designated from Level I, for essentially normal acuity, through Level XI, for profound deafness. 38 C.F.R. § 4.85 (h), Table VI. In order to establish entitlement to a compensable rating for hearing loss, it must be shown that certain minimum levels of the combination of the percentage of speech discrimination loss and average pure tone decibel loss are met. The assignment of disability ratings for hearing impairment is derived by a mechanical application of the Rating Schedule to the numeric designations assigned after audiometric evaluations are rendered. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992).

The criteria for rating hearing impairment use controlled speech discrimination tests (Maryland CNC) together with the results of pure tone audiometry tests. These results are then charted on Table VI, or Table VIA in exceptional cases as described in 38 C.F.R. § 4.86, and Table VII, as set out in the Rating Schedule. 38 C.F.R. § 4.85. An exceptional pattern of hearing loss occurs when the pure tone threshold at 1000, 2000, 3000, and 4000 Hertz is 55 decibels or more, or when the pure tone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz. 38 C.F.R. § 4.86. Exceptional patterns of hearing impairment allow for assignment of the Roman numeral designation through the use of Table VI or an alternate table, Table VIA, whichever is more beneficial to the Veteran. See 38 C.F.R. §§ 4.85, 4.86, DC 6100.

At a November 2018 VA examination, the Veteran reported that he had difficulty hearing in noisy environments or in group situations. Audiometric testing in the right ear revealed pure tone thresholds of 75, 80, 80, and 90 decibels at 1000, 2000, 3000, and 4000 Hz, respectively, which resulted in an average pure tone threshold of 81 decibels. Audiometric testing in the left ear revealed pure tone thresholds of 75, 75, 85, and 90 decibels at 1000, 2000, 3000, and 4000 Hz, respectively, which resulted in an average pure tone threshold of 81 decibels. This exhibits an exceptional hearing pattern in each ear under 38 C.F.R. § 4.86. The VA examiner also determined that the use of speech discrimination scores was not appropriate for this Veteran because of language difficulties, cognitive problems, inconsistent speech discrimination scores, etc., that made combined use of pure tone average and speech discrimination scores inappropriate. Thus, using Table VIA is appropriate here. Such results in Level VII hearing in the left ear and Level VII hearing in the right ear, and it warrants a 40 percent rating under Table VII. See 38 C.F.R. §§ 4.85, 4.86, DC 6100.

At a February 2019 VA examination, the Veteran reported that it was very hard to hear, and he had a hard time understanding even with hearing aids. Audiometric testing in the right ear revealed pure tone thresholds of 65, 70, 70, and 75 decibels at 1000, 2000, 3000, and 4000 Hz, respectively, which resulted in an average pure tone threshold of 70 decibels. Audiometric testing in the left ear revealed pure tone thresholds of 75, 75, 75, and 80 decibels at 1000, 2000, 3000, and 4000 Hz, respectively, which resulted in an average pure tone threshold of 76.25 decibels. This exhibits an exceptional hearing pattern in each ear under 38 C.F.R. § 4.86. Speech recognition was 48 percent in the right ear and 52 percent in the left ear. Using Table VIA results in Level VI hearing in the right ear and Level VI hearing in the left ear, and it warrants a 30 percent rating under Table VII. Using Table VI results in Level VIII hearing in the right ear and Level VIII hearing in the left ear, and it warrants a 50 percent rating under Table VII. Thus, Table VI is more beneficial to the Veteran in this case. See 38 C.F.R. §§ 4.85, 4.86, DC 6100.

At a March 2019 VA examination, the examiner stated that he was unable to obtain reliable or consistent audiometric testing results despite multiple re-instruction. He stated this may have been due to patient fatigue. Testing was discontinued. Thus, the examiner was unable to determine the current status of the Veteran’s hearing acuity or opine as to whether the Veteran’s hearing had worsened. 

Thus, based on the foregoing, the Board finds that a rating in excess of 40 percent prior to February 16, 2019, and in excess of 50 percent thereafter for bilateral hearing loss is not warranted. In this regard, the aforementioned VA audiometric test results reveal that, prior to February 16, 2019, the Veteran’s bilateral hearing loss resulted in, at most, Level VII hearing acuity in both ears, which equates to a 40 percent rating. However, as of February 16, 2019, the February 2019 VA examination revealed that such resulted in, at most, Level VIII hearing acuity in both ears, which equates to a 50 percent rating. 

To the extent that the Veteran contends that his bilateral hearing loss is more severe than currently evaluated, the Board observes that the Veteran, while competent to report symptoms capable of lay observation, including an inability to hear well in noisy environments., is not competent to report that his hearing acuity is of sufficient severity to warrant higher ratings under VA’s tables for rating hearing loss disabilities because such an opinion requires medical expertise (training in evaluating hearing impairment), which he has not been shown to have. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2006); Charles v. Principi, 16 Vet. App. 370 (2002); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). 

Despite the foregoing, the Board acknowledges the Veteran’s aforementioned reports of the difficulties associated with his bilateral hearing loss. However, even after considering such contentions as to the effects of the disability on his daily life, the Board finds the criteria for higher ratings are not met. See Lendenmann, supra. In this regard, in Doucette v. Shulkin, 28 Vet. App. 366 (2017), the United States Court of Appeals for Veterans Claims held that the rating criteria for hearing loss contemplate the functional effects of decreased hearing and difficulty understanding speech in an everyday work environment as these are the effects that VA’s audiometric tests are designed to measure. The Veteran has not otherwise described functional effects that are considered exceptional, or that are not otherwise contemplated by the assigned evaluation. Id. Thus, his complete disability picture is compensated under the rating schedule. 

The Board has also considered whether additional staged ratings under Hart, supra, are appropriate for the Veteran’s service-connected bilateral hearing loss; however, the Board finds that his symptomatology has been stable throughout each period on appeal. Therefore, assigning additional staged ratings for such disability is not warranted. Further, neither he nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record, in regard to the increased rating claim adjudicated herein. Doucette, supra. 

Therefore, the Board finds that a rating in excess of 40 percent prior to February 16, 2019, and in excess of 50 percent thereafter for bilateral hearing loss is not warranted. In reaching such determinations, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran’s claim. Therefore, the benefit of the doubt doctrine is not applicable in the instant appeal, and his increased rating claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

 

 

K. STANTON

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Dawn A. Leung, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.