# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-0433

RUTH HILL FREDERICK, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 23, 2010                     Decided March 11, 2011)

*Paul M. Schoenhard*, of Washington D.C., for the appellant.

*Robert Schneider*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *David L. Quinn*, Deputy Assistant General Counsel, were on the brief, all from Washington, DC, for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL and MOORMAN, *Judges*.

KASOLD, *Chief Judge*, filed the opinion of the Court.

KASOLD, *Chief Judge*: Mrs. Ruth Hill Frederick is the remarried surviving spouse of World War II veteran Fred T. Hill. She appeals through counsel a November 19, 2008, decision of the Board of Veterans' Appeals (Board) that denied restoration of dependancy and indemnity compensation (DIC) because she did not file an application for DIC within one year from the date of the enactment of Public Law 108-183 (Public Law), much of which is codified at 38 U.S.C. § 103(d)(2)(B) (2003). Mrs. Frederick essentially argues that the requirement for applying for DIC within one year of enactment of the Public Law applies only to those who, for whatever reason, had never applied for DIC prior to enactment of the Public Law and that this requirement does not apply to her, a surviving spouse seeking reinstatement of such benefits. The Secretary disputes Mrs. Frederick's interpretation of the statute. For the reasons set forth below, the Board's decision will

be reversed and the matters remanded for further adjudication.

## I. BACKGROUND

Mr. Hill had active service from September 1942 to July 1945. Subsequent to Mr. Hill's death on May 26, 1970, his surviving wife, Ruth Hill, was found to be entitled to and awarded DIC benefits. On December 4, 1986, at the age of 57, Ruth Hill remarried and notified the Secretary of her remarriage. At that time, the law did not authorize the continuation of DIC payments for surviving spouses if they remarried, 38 U.S.C. §§ 101, 103 (1986), and such payments to Mrs. Ruth Hill Frederick stopped.

On December 16, 2003, Congress amended the law to authorize DIC for surviving spouses even if they remarried, provided the remarriage occurred after the surviving spouse attained the age of 57. Veterans Benefit Act of 2003, Pub. L. No. 108-183, § 101, 117 Stat. 2651, 2652-53 (2003); *see also* 38 U.S.C. § 103(d)(2)(B) (2003). Upon learning of this change in law, Mrs. Frederick sought reinstatement of her DIC payments in November 2007. However, the Board denied her request because she sought reinstatement more than one year after passage of the Public Law. The Board based its denial on an interpretation of a provision of the Public Law that has not been codified. The Board interpreted this provision as requiring the submission of a new application for DIC within one year of enactment of the Public Law, even for those surviving spouses who previously were receiving DIC and otherwise needed only to have DIC reinstated. The uncodified provision states:

> In the case of an individual who but for having remarried would be eligible for benefits under title 38, United States Code, by reason of the amendment made by subsection (1) and whose remarriage was before the date of the enactment of this Act and after the individual had attained age 57, the individual shall be eligible for such benefits by reason of such amendment only if the individual submits an application for such benefits to the Secretary of Veterans Affairs not later than the end of the one-year period beginning on the date of the enactment of this Act.

117 Stat. at 2652-53.[1]

---

[1] The codified statute, 38 U.S.C. § 103(2)(B), states that "[t]he remarriage after age 57 of the surviving spouse of a veteran shall not bar the furnishing of benefits specified in paragraph (5) to such person as the surviving spouse of the veteran," and does not include the provision in Pub. L. No. 108-183 that requires an application for DIC to be

Succinctly stated, the issue before the Court is the scope of Public Law 108-183 and whether the uncodified provision requiring an application for DIC to be submitted within one year of enactment of the Public Law applies to a surviving spouse seeking reinstatement of DIC.

## II.  THE PARTIES' ARGUMENTS

Mrs. Frederick focuses on the language of the Public Law, which she contends has four requirements to establish entitlement to DIC for a surviving spouse who remarried prior to enactment of the Public Law: (1) The surviving spouse must be eligible for benefits "but for having remarried," (2) the remarriage must have occurred after the surviving spouse has attained the age of 57, (3) the remarriage must have occurred before December 16, 2003, and (4) an application for DIC must be submitted no later than December 15, 2004.  The parties do not dispute that Mrs. Frederick meets the first three requirements.  As to the fourth requirement, Mrs. Frederick notes that she submitted her application for DIC, shortly after her veteran-husband died, well before December 15, 2004, and was found entitled to DIC benefits.  Mrs. Frederick essentially reasons that the time limit to submit an application for DIC provided in the Public Law effectively applies only to those claimants who remarried after attaining the age of 57 and prior to enactment of the Public Law, but who had never previously applied for DIC; these claimants are the ones required to submit an application for DIC no later than December 15, 2004.  Otherwise stated, Mrs. Frederick essentially contends she was not applying for DIC; rather she was seeking reinstatement of DIC.[2]

The Secretary also focuses on the language of the Public Law, but he contends the statute clearly creates a one-year window (from December 16, 2003 (date of enactment of the Public Law)

submitted before the end of the one-year period after enactment of the Public Law.  The statutes at large are legal evidence of the laws.  *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993).  Thus, Pub. L. No. 108-183 is controlling law.

[2] Mrs. Frederick also focuses on the Secretary's regulation, 38 C.F.R. § 3.55(a)(10)(ii) (2010), which essentially parrots the statute, and notes that whereas the Public Law requires "an application" to be submitted, the regulation states "the application" must be submitted.  Because the Secretary eschewed any intent to change the substance of the statute by using "the" instead of "an," we do not further address this part of Mrs. Frederick's argument.  *See Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) (holding that if an agency regulation parrots the law, the question presented is one of statutory interpretation); *Haas v. Peake*, 525 F.3d 1168 (Fed. Cir. 2008); *Sharp v. Shinseki*, 23 Vet.App. 267, 276 (2009).

to December 15, 2004) in which all surviving spouses who remarried after the age of 57 and prior to enactment of the Public Law are required to apply for DIC, including reinstatement of DIC, or forever forgo such benefit. The Secretary argues that the phrase "submits an application" supports his interpretation because it is prospective in nature, which indicates that a new application must be submitted and that past applications are not acceptable. The Secretary also argues that any other interpretation creates an absurd result because it swallows the rule, and he further relies on the legislative history, which he argues clearly supports his interpretation.

### III.  DISCUSSION

The Court interprets a statute de novo. *See* 38 U.S.C. § 7261(a)(1); *Majeed v. Nicholson*, 19 Vet.App. 525, 530-31 (2006); *see also Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003) ("[I]nterpretation of a statute or regulation is a question of law . . . ."). "[T]he starting point in every case involving construction of a statute is the language itself." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472 (1977). "Where the plain meaning of a statute is discernable, that 'plain meaning must be given effect' . . . ." *Tallman v. Brown*, 7 Vet.App. 453, 460 (1995) (quoting *Gardner v. Derwinski,* 1 Vet.App. 453, 587 (1991))*.* "Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." *Gardner*, 1 Vet.App. at 586 (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05 (1988)).

**A.  The Public Law does not create a one-year window for reinstatement of DIC.**

Starting with the plain language of the Public Law, we note that, contrary to the Secretary's interpretation, it does not create a one-year "window" in which to submit an application. Rather, the language very clearly creates only an end date by which an application must be submitted. To wit, the Public Law states that "an application" must be submitted "*not later than* the end of the one-year period beginning on the date of the enactment." 117 Stat. at 2653 (emphasis added).

There also can be no doubt that Congress knows how to create a window of time when it so desires. Indeed, in the same Public Law in which Congress created this end-date provision, it amended another statutory provision dealing with veterans benefits by replacing an explicitly provided window, (to wit: "*during* the 1-year period"), with an end-date provision similar to the end-date provision applicable here, (to wit: "*before the end* of the one-year period beginning on the date

4

of the enactment of [the Public Law]"). *See id.* (amending Veterans Benefits Act of 2002, Pub. L. No. 107-330, 116 Stat. 2820, 2822 (2002)); *Atl. Cleaners & Dryers v. United States*, 286 U.S. 427, 433 (1932) (stating that there is a "natural presumption that identical words used in different parts of the same act are intended to have the same meaning"); *Talley v. Derwinski,* 2 Vet.App. 282, 286 (1992) ("'[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.'" (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (4th ed. 1984))).

The Secretary suggests that the universe of persons affected by this Public Law provision includes only those who previously applied for benefits. He further reasons that if the universe of persons affected by this portion of the Public Law is only those who previously applied for DIC, then all such persons would have met the end date for submission of an application, rendering any such interpretation of the uncodified provision of the Public Law meaningless. The Secretary's universe of persons, however, is ill defined. Specifically, it ignores the fact that there likely are surviving spouses who remarried after the age of 57 and prior to enactment of the Public Law who never applied for DIC prior to enactment of the Public Law. Under the plain wording of the statute – which sets an end date for application –  these individuals clearly would have to submit an application no later than December 15, 2004, or forever lose their benefits. Thus, the plain language interpretation is not rendered meaningless and is not absurd, as the Secretary suggests.

**B. The Public Law does not specifically address reinstatement of DIC.**

Although the Secretary contends that the Public Law requires an application for the reinstatement of DIC for those whose remarriage previously imposed a bar to continued receipt of DIC, he points to no language in the Public Law specifically addressing reinstatement of DIC or review of one's entitlement to DIC. Further undercutting the Secretary's suggested interpretation of the Public Law is the absence of any regulation requiring an application for reinstatement of DIC and a past practice that has not always required such an application. For example, the termination of a second marriage by death or divorce results in the reinstatement of DIC payments without another "application," if the surviving spouse previously had been found eligible for DIC. 38 C.F.R. § 3.55(a) (2010); *see also Owings v. Brown*, 8 Vet.App. 17, 18 (1995) (surviving spouse "notified" regional office (RO) of divorce and "wished to begin receiving DIC"); *Vecina v. Brown*, 6 Vet.App.

5

519, 521 (1994) (surviving spouse "corresponded" with RO, "requesting reinstatement of" DIC); *Dowlen v. Principi*, 3 Vet.App. 507, 507 (1992) (surviving spouse "submitted a request" for DIC to be reinstated).

Moreover, VA regulations provide only one form with regard to seeking DIC, and that is the form for an initial application for DIC. *See* VA Form 21-534. This form requires the applicant to provide information about the death of the veteran and the veteran's service, yet this information is not required for reinstatement of DIC because entitlement based on the veteran's status was established when DIC first was awarded. Thus, the uncodified portion of the Public Law referencing an application logically refers to the initial application for benefits, consistent with Mrs. Frederick's interpretation, and consistent with the plain wording of the Public Law that provides an end date for submission of an initial application as opposed to a window in which a second or additional application must be submitted.

## C. A one-year window to request reinstatement of DIC is inconsistent with the statutory scheme and purpose.

Not only does the plain language of the Public Law not create a one-year window or specifically address reinstatement of DIC, the Secretary's interpretation that reinstatement must be sought by re-application within a one-year window is inconsistent with the statutory scheme for veterans benefits. Congress has provided that the effective date for an award or increase of benefits (explicitly including DIC) due to a liberalizing law shall be based on the facts found, but not earlier than the date of the liberalizing law. *See* 38 U.S.C. § 5110(g). This same statutory provision also provides for a retroactive effective date up to one year prior to the date of application or the date of administrative determination. *Id*. And, the Secretary's implementing regulation provides for review of a claim at either the request of the claimant or the initiative of the Secretary, and an effective date up to one year earlier than such review. 38 C.F.R. § 3.114 (2010).

In this case, the Secretary undertook a review of Mrs. Frederick's claim for reinstatement of DIC, not at his own initiative, but at her request. Pursuant to the Secretary's own regulation, Mrs. Frederick may be authorized benefits up to one year prior to her request for reinstatement of DIC. Nothing in section 5110(g) or § 3.114 limits the submission of an application for reinstatement of benefits, an administrative review, or submission of a request for review of entitlement to benefits,

6

to only a one-year window after enactment of a liberalizing law, and, in the absence of congressional intent to create such a limitation, no such limitation should be read into the Public Law. *See Talley, supra.*

Moreover, the Secretary's interpretation would create a limitation to the award of DIC that would be inconsistent with the general purpose of the Public Law, which was make more equitable the veterans benefits system and, more specifically, to provide that "the remarriage after age 57 of the surviving spouse of a veteran shall not bar the furnishing of benefits." 38 U.S.C. § 103(d)(2)(B) (2010); 117 Stat. at 2651. Similarly, the Secretary's interpretation conflicts with the overall purpose and fairness of the veterans benefit system. "Congress' intent in crafting the veterans benefit system is to award 'entitlements to a special class of citizens, those who risked harm to serve and defend their country. This entire scheme is imbued with special beneficence from a grateful sovereign.'" *Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006) (quoting *Bailey v. West*, 160 F.3d 1360, 1370 (Fed. Cir. 2006) (Michel, J., concurring)). "[I]n the context of veterans' benefits where the system of awarding compensation is so uniquely pro-claimant, the importance of systemic fairness and the appearance of fairness carries great weight." *Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998).

In sum, in the absence of clear, unambiguous congressional language supporting the Secretary's reading of the Public Law that it creates a one-year window for all surviving spouses to seek reinstatement of DIC benefits, the Secretary's interpretation is not reasonable or warranted. *See Sursely v. Peake*, 551 F.3d 1351, 1357 (Fed. Cir. 2009) (stating that, under *Brown v. Gardner*, 513 U.S. 115, 118 (1994), the government's interpretation is only permitted if it is unambiguously supported by the statutory language).

**D. Prospective requirement to submit an application must be read in context.**

Although the Secretary correctly argues that the phrase "submits an application" as used in the Public Law indicates that a new application is needed to secure DIC, that phrase must be considered in context. *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("[T]he meaning of statutory language, plain or not, depends on context."); *Cal. Indus. Prods., Inc. v. United States*, 436 F.3d 1341, 1353 (Fed. Cir. 2006) ("When a particular term is not expressly defined in a statute, the meaning of that term may be discerned by 'look[ing] to the provisions of the whole law, and to

7

its object and policy.'" (quoting *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1355 (Fed. Cir. 2003))); *see, e.g.*, *Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 25 n.6 (1988) ("'Words are not pebbles in alien juxtaposition; they have only communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which the are used . . . .'" (quoting *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir. 1941) (L. Hand, J.))).  As discussed above, the Public Law does not specifically address reinstatement of DIC nor does it create a one-year window in which an application for DIC must be submitted.  As discussed above, consistent with the overall statutory scheme, anyone who previously applied for and was entitled to DIC could have their benefits reinstated sua sponte by the Secretary, or upon request, without submission of another application.  38 U.S.C. § 5110(g); 38 C.F.R. § 3.114.  Thus, in context, the phrase "submits an application," although prospective in nature, applies only to those who had not applied for DIC prior to passage of the Public Law, and cannot be interpreted to apply to what Congress did not otherwise specifically address in the Public Law, i.e., review of entitlement to or reinstatement of DIC.  *Cf. Tropf v. Nicholson,* 20 Vet.App. 317, 321 n.1 (2006) ("[A] functioning system of laws must give primacy to the plain language of authorities . . . .  Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or – more importantly – veteran can rely on a statute or regulation to mean what it appears to say.").

### E.  Legislative history cannot trump plain meaning of statute.

We acknowledge the Secretary's reference to (1) a congressional compromise agreement that states that spouses who had remarried on or before age 57 and before the enactment of the Public Law "would have one year to apply for *the reinstatement of these benefits*," 149 CONG. REC. S15,133-01 (daily ed. Nov. 19, 2003) (statement of Rep. Specter), and (2) a congressional cost-benefit analysis that considered only the cost associated with surviving spouses who reapplied for reinstatement of benefits within a one-year period, H.R. REP. NO. 108-211, at 2315-16, 2332 (July 15, 2003).  Standing alone, these legislative references are reason for pause, but they do not stand alone.

We start with the axiom that legislative history is not legislation and cannot trump the plain meaning of the legislation.  *See Van Wersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144,

1152 (Fed. Cir. 1999) (holding that congressional intent, as clearly expressed in legislative history, cannot "trump the irrefutably plain [statutory] language that emerged when Congress actually took pen to paper"); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 567 (2005) (stating that legislative history is "often murky, ambiguous, and contradictory"); *United States v. LaBonte*, 520 U.S. 751, 757 (1997) ("[W]e assume that in drafting this legislation, Congress said what it meant."); *Ratzlaf v. United States*, 510 U.S. 135, 147 (1994) (holding that even where "[t]here are . . . contrary indications in the statute's legislative history. . . . we do not resort to legislative history to cloud a statutory text that is clear").

Similarly, it is axiomatic that, had Congress wanted to limit reinstatement of DIC for remarried surviving spouses, as opposed to providing a limited time during which those remarried surviving spouses who had never sought DIC could apply for such benefits, it easily could have done so in the text of the Public Law, but did not. *See Cypert v. Peake*, 22 Vet.App. 207, 311 (2008) ("[T]he Court cannot read into a statute an alternative purpose premised on congressional intent.").

Moreover, the overall legislative history is, at best, ambiguous, and even if it could trump the statutory text, any ambiguity necessarily would be resolved in favor of Mrs. Frederick. *Cf. Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of VA*, 260 F.3d 1365, 1378 (Fed. Cir. 2001) ("[I]t is a well-established rule of statutory construction that when a statute is ambiguous, 'interpretive doubt is to be resolved in the veteran's favor.'" (quoting *Brown v. Gardner*, 513 U.S. at 118)); *see also Sursely, supra.* Although the Secretary cites legislative history supporting an interpretation of the statute other than its plain meaning, the fact, as noted above, that (1) Congress amended existing language in the same Public Law creating a window for submission of an application for benefits to instead create an end date by which an application must be submitted, and (2) the Public Law does not specifically address reinstatement of DIC or re-evaluation of entitlement to DIC, supports an interpretation of the statute that is consistent with its plain meaning, to wit: The uncodified provision establishes an end date – not a window – for submission of an application for DIC by a remarried surviving spouse who had not submitted an application prior to enactment of the Public Law. Accordingly, this provision does not apply to a remarried surviving spouse, such as Mrs. Frederick, seeking reinstatement of DIC.

## IV. CONCLUSION

Read as a whole and in context of the veterans benefits statutory scheme, with recognition that Congress knows how to draft legislation with an explicit filing window and did not do so here, the plain language of the uncodified portion of the Public Law requiring an application for DIC to be submitted within one year of enactment of the Public Law does not apply to a surviving spouse seeking reinstatement of DIC. Rather, reinstatement of DIC benefits is governed by 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114, which permit reinstatement of DIC based upon sua sponte review by the Secretary or upon request by the surviving spouse, with an effective date up to one year earlier than such review or request.

Accordingly, the Board's decision denying DIC will be reversed and the matters remanded for reinstatement of DIC and a determination of the proper effective date. *See Gutierrez v. Principi*, 19 Vet.App. 1, 10 (2004) (reversal is the appropriate remedy in cases in which the only permissible view of the evidence is contrary to the Board's decision); *Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"). On remand, Mrs. Frederick may present, and the Board must consider, any additional evidence and argument in support of the matters remanded. *See Kay v. Principi*, 16 Vet.App. 529, 534, (2002). These matters are to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

The Board's decision that Mrs. Frederick was not entitled to reinstatement of DIC because she did not submit an application within a one-year window from December 16, 2003, to December 15, 2004, is REVERSED, and the matters are REMANDED for further adjudication consistent with this opinion.