# United States Court of Appeals
# for the Federal Circuit

———————————

**RUTH HILL FREDERICK,**
*Claimant-Appellee,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS
AFFAIRS,**
*Respondent-Appellant.*

———————————

2011-7146

———————————

Appeal from the United States Court of Appeals for
Veterans Claims in case No. 09-433.

———————————

Decided: July 3, 2012

———————————

PAUL M. SCHOENHARD, Ropes & Gray LLP, of Washington, DC, argued for claimant-appellee.

JOSHUA E. KURLAND, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellant. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and AMANDA R. BLACKMON, Attorney,

United States Department of Veterans Affairs, of Washington, DC.

---

Before RADER, *Chief Judge*, CLEVENGER and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* CLEVENGER.
Dissenting opinion filed by *Circuit Judge* REYNA.

CLEVENGER, *Circuit Judge*.

The Secretary of the Department of Veterans Affairs ("Secretary") appeals from the judgment of the United States Court of Appeals for Veterans Claims ("Veterans Court") that Mrs. Ruth Hill Frederick is entitled to dependency and indemnity compensation (DIC) benefits. *Frederick v. Shinseki*, 24 Vet. App. 335 (2011). Because the Veterans Court misinterpreted the relevant statute, we reverse.

I

As an initial matter, we must attend to our jurisdiction over this appeal. In this case, the Veterans Court did not enter a final judgment ending the litigation. Instead, it remanded the case for a determination of the proper effective date for the benefits it conferred on Mrs. Frederick. Ordinarily, we exercise jurisdiction under 38 U.S.C. § 7292(a) only over final judgments by the Veterans Court. *Adams v. Principi*, 256 F.3d 1318, 1320-21 (Fed. Cir. 2001). In limited circumstances, however, we have jurisdiction to hear non-final judgments by the Veterans Court. We spelled out those circumstances in *Williams v. Principi*, 275 F.3d 1361 (Fed. Cir. 2002). Thus, when the Veterans Court has rendered a clear and final decision on a legal issue that will directly govern the remand proceedings, and there is a substantial risk that

the issue will not survive a remand, we may entertain the appeal. *Id.* at 1364. Those requirements are met here, and we may proceed because the appeal presents the question of the proper interpretation of a statute. *See* 38 U.S.C. § 7292(a); *Forshey v. Principi*, 284 F.3d 1335, 1351 (Fed. Cir. 2002) (en banc). We review legal determinations by the Veterans Court independently without deference. *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991).

## II

Mrs. Frederick was previously married on February 25, 1961, to World War II veteran Fred T. Hill. Mr. Hill died on May 26, 1970, and upon his death, Mrs. Hill became entitled to DIC benefits as the surviving spouse of a veteran whose death resulted from service-related injury or disease. *See* 38 U.S.C. §§ 1310-1318. Her entitlement continued until December 4, 1986, when at the age of 57 she was remarried to Mr. Spencer Frederick. In 1986, and until January 1, 2004, the law provided that a surviving spouse receiving DIC benefits lost entitlement to those benefits upon remarriage. *See* 38 U.S.C. § 101(3) (defining "surviving spouse" in part as one who "has not remarried"). Consequently, when Mrs. Frederick notified the DVA of her remarriage, her DIC benefits were terminated.

On December 16, 2003, Congress enacted the Veterans Benefits Act of 2003 ("Act"), with an effective date of January 1, 2004 ("effective date"). The purpose of the Act was to improve certain benefits administered by the Secretary, including DIC benefits to surviving spouses. The legislative history of the Act reveals that Congress was concerned that the existing law, which terminated DIC benefits upon remarriage of a surviving spouse, stood as disincentive to remarriage for older surviving spouses.

*See* H.R. Rep. No. 108-211, at 12 (2003), *reprinted in* 2004 U.S.C.C.A.N. 2312, 2315. Consequently, Congress considered revising the law to overcome the existing law that terminated DIC benefits upon remarriage. At first, the House of Representatives considered such a revision for surviving spouses who remarried after the age of 55. Upon a compromise with the Senate, the age was raised to 57.

The revision necessary to accomplish this goal was made by an amendment to 38 U.S.C. § 103(d)(2)(B), which before amendment provided certain medical care benefits to surviving spouses who remarried after the age of 55. The Act retained those medical benefits and added specific language to section 103(d)(2)(B) that secures eligibility for DIC benefits for surviving spouses who remarry after the age of 57. *See* Veterans Benefits Act of 2003, Pub. L. No. 108-183, 117 Stat. 2651, 2652 (codified at 38 U.S.C. § 103(d)(2)(B)) ("The remarriage after age 57 of the surviving spouse of a veteran shall not bar the furnishing of [DIC] benefits to such person as the surviving spouse of the veteran."). Thus, after the effective date, any surviving spouse who remarries after the age of 57 (but not one who remarries at an earlier age) remains eligible for DIC benefits.

Congress also provided new DIC eligibility for surviving spouses who remarried after the age of 57, but before the date of enactment of the Act, in subsection (e) of section 101 of the Act. *Id.* at 2653. Subsection (e), which is uncodified, reads as follows:

> (e) APPLICATION FOR BENEFITS.— In the case of an individual who but for having remarried would be eligible for benefits under title 38, United States Code, by reason of the amendment made by subsection (a), and whose remarriage

was before the date of enactment of this Act and after the individual had attained age 57, the individual shall be eligible for such benefits by reason of such amendment only if the individual submits an application for such benefits to the Secretary of Veterans affairs not later than the end of the one-year period beginning on the date of enactment of this Act.

Subsection (e) refers to an individual who remarried before the effective date of the Act and who "but for having remarried would be eligible for [DIC] benefits . . . by reason of the amendment made by subsection (a)." *Id.* The reference to the amendment made by subsection (a) thus defines a class of surviving spouses who remarry after the age of 57 and who thus become eligible for DIC benefits as a result of the Act.

This class necessarily includes two groups of surviving spouses who remarried after the age of 57: (a) those who previously applied for and received DIC benefits, and whose remarriage before the effective date of the Act destroyed their eligibility for DIC benefits (such as Mrs. Frederick), and (b) those who for whatever reason never applied for DIC benefits upon the death of their veteran spouse, but who remarried before the effective date of the Act, and thereby lost eligibility for DIC benefits.

The text of subsection (e) further provides that "the individual [whether in group (a) or (b)] shall be eligible for such benefits by reason of such amendment only if the individual submits an application for such benefits to the Secretary of Veterans Affairs not later than the end of the one-year period beginning on the date of enactment of this Act." *Id.*

On November 8, 2007, almost three years after enactment of the above-quoted legislation, Mrs. Frederick

wrote the DVA asking it to begin "my DIC again. It was stopped Dec. 1986."

## III

The Nashville, Tennessee, Regional Office of the Department of Veterans Affairs (DVA) treated Mrs. Frederick's 2007 letter as an informal application for DIC benefits. On February 20, 2008, the Regional Office denied Mrs. Frederick's application as untimely, stating that "all claims for restoration of DIC benefits terminated due to remarriage on or after age 57 had to have been submitted in writing during the period of December 16, 2003 [the enactment date] to December 16, 2004."

Mrs. Frederick appealed to the Board of Veterans Appeals. She argued that prior to 2007, she had no way of knowing of her eligibility for restoration of her discontinued DIC benefits, and that the Secretary had breached his duty to notify her of her eligibility. Because of the Secretary's alleged breach, Mrs. Frederick argued that her informal application should have been accepted. The Board rejected her notice argument. The Board reasoned that Mrs. Frederick's "application for such benefits" was untimely, and therefore ineffective.

## IV

Mrs. Frederick appealed to the Veterans Court. She argued entitlement to DIC benefits as a matter of law under subsection (e) because (1) she is a surviving spouse eligible for benefits "but for having remarried," (2) she was at least 57 years old at the time of her remarriage, (3) her remarriage was before the date of enactment of the Act, and (4) her 1970 application for DIC was filed before December 16, 2004.

In response, the Secretary argued that eligibility could not be satisfied by an application filed before the

enactment of the statute, because the statutory language is written in the present tense ("only if the individual submits an application") and because the Act set forth a requirement that an application be filed in a window of time, beginning on the date of enactment of the Act and ending a year later.  In contrast, Mrs. Frederick's view treated the application timing requirement as an end date: so long as an application was filed before the end date, entitlement is satisfied.  Furthermore, the Secretary recited numerous instances in the legislative history of subsection (e) that clearly show the intent of legislators that the filing period in subsection (e) is a window of time, not merely an end date that could be satisfied by an application filed before the enactment date. *See, e.g.*, H.R. Rep. No. 108-211, at 12, 34 ("[S]urviving spouses who remarried . . . before this provision is enacted would have one year to apply for reinstatement of their DIC benefit."); 149 Cong. Rec. S15133 (daily ed. Nov. 19, 2003) (same); 149 Cong. Rec. H11716 (daily ed. Nov. 30, 2003) (same).

Although the Veterans Court appreciated the force of the Secretary's argument that the statute's filing obligation is prospective from the enactment date, as well as the import of the legislative history on that issue, the Veterans Court saw subsection (e) of the Act in a different light. It agreed with Mrs. Frederick that the statute creates an end date, not a window of time, for submission of an application for DIC benefits.  But it held that the application requirement is only applicable to a remarried spouse who had not previously applied for and received DIC benefits (group (b) described above).  Thus, the Veterans Court expressly held that "this provision [the application requirement] does not apply to a remarried surviving spouse, such as Mrs. Frederick, seeking reinstatement of DIC." *Frederick*, 24 Vet. App. at 342.  The Veterans Court reached that conclusion because it treated Mrs. Frederick

as seeking reinstatement of previous DIC benefits, not as claiming eligibility for newly-conferred DIC benefits. The Veterans Court thus reasoned that Mrs. Frederick's reinstatement request should be governed by 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114, which permit the Secretary to take the initiative to establish effective dates for benefits that have been enhanced by a change in law. In a nutshell, the Veterans Court read the relevant statute to set forth an end date, December 16, 2004, for applications to gain DIC benefits, with the application requirement applying only to the group (b) individuals described above.

The Veterans Court bolstered its two-part decision in several ways. First, in deciding that subsection (e) creates a filing end date time, the Veterans Court relied on the distinction between the language in subsection (e) and the language of an existing statutory provision that was amended by subsection (f) in section 101 of the Act. The language of the existing provision created a filing window by stating that the application under the provision must be filed "during the 1-year period ending on the effective date." In subsection (f) of the Act, this "during" language was changed to "before the end of the one-year period beginning on the date of enactment." This amendment resulted in the same timing language as is found in subsection (e). From this, the Veterans Court reasoned that Congress knew how to create a window filing requirement, as it had in the language amended by subsection (f), and because it used different language in subsection (e), that section could not create a window filing time.

Second, the Veterans Court viewed the argument that subsection (e) presents a window filing requirement as inconsistent with 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114. Because nothing in those provisions restricts the

time when the Secretary can set an effective date for a benefit enhanced by a change in law, the Veterans Court surmised that reading a strict window filing time into subsection (e) would conflict with those provisions.

Third, the Veterans Court analogized Mrs. Frederick's situation to the situation in which a surviving spouse became ineligible for DIC benefits by remarriage before the effective date but re-qualified for such benefits upon the termination of the second marriage, whether by death or divorce. Citing 38 C.F.R. § 3.55(a) and cases in which the Secretary restored benefits on the termination of the second marriage upon informal request by the surviving spouse, the Veterans Court stated that in those situations, the surviving spouse was not required to file an application. If the surviving spouse who reacquires DIC benefits on the termination of a disqualifying marriage does not have to file an application for restoration, the Veterans Court surmised that Mrs. Frederick too should not be required to file an application.

Because the Veterans Court saw Mrs. Frederick's case as a request for establishment of an effective date for the benefits afforded to her by the Act, it remanded the case for ascertainment of a correct effective date. The Secretary timely appealed to this court.

V

Before this court, the parties present again their conflicting interpretations of the legislation which (1) created a right for surviving spouses who remarry after the age of 57 to retain DIC benefits that otherwise would cease upon remarriage, (2) extended that right to surviving spouses who remarried after the age of 57 before enactment of the legislation, and (3) set out an explicit requirement that the an individual who remarried after the age 57 and before the date of enactment would be eligible for such

benefits only if the individual submits an application for such benefits in the specified time.

Mrs. Frederick continues to argue that the plain language of the statute only requires an application to have been filed before the calendar date December 13, 2004.

Consequently, she interprets the one year calculation in the statute to refer only to its end point, one year after enactment of the statute. So long as an application for DIC benefits has been filed before that date, as was her 1970 initial application, she maintains the statute's requirements are met. She posits that this reading must be correct because the DVA has created no forms for reinstatement of DIC benefits based on subsection (e)—instead its only relevant form is for initial application of benefits. Mrs. Frederick rejects the holding of the Veterans Court that she is not even covered by subsection (e), describing that holding as harmless error. At oral argument, Mrs. Frederick argued that the admittedly adverse legislative history must be overlooked because of what she believes is the correct interpretation of the statute.

The Secretary argues that the statute imposes a prospective application filing requirement binding on all individuals seeking DIC benefits due to remarriage before the effective date of the Act and after the age of 57. The Secretary insists that subsection (e) must apply to both groups (a) and (b) described above, and that both should be treated the same. An application received any time before the Act's enactment, says the Secretary, is a nullity insofar as the Act's bestowal of eligibility to remarried surviving spouses is concerned. Before the Act, Mrs. Frederick was ineligible for benefits, according to the Secretary, and it is only because of the Act that, effective January 1, 2004, Congress created a new avenue for eligibility. In the Secretary's view, an application for

benefits, filed during a time when such benefits were understood to terminate upon remarriage, cannot create an entitlement to the new eligibility created by the Act.

The Secretary also argues that the Veterans Court misunderstood the import of the amendment made in subsection (f) and erred in seeing the case as governed by 38 U.S.C. § 5110(g). Further, the Secretary correctly posits that the rule of interpretative doubt favoring veterans in *Brown v. Gardner*, 513 U.S. 115 (1994), has no force if a statute properly interpreted leaves no ambiguity as to its meaning. The Secretary maintains that the Veterans Court erred with its analogy to surviving spouses whose DIC benefits are restored upon termination of a disqualifying second marriage, and argues that should any doubt as to the meaning of the statute exist, we should be guided by the legislative history.

## VI

This appeal calls upon us to interpret subsection (e) of the Act, and in the process to answer two questions: does the subsection apply to Mrs. Frederick, and if so, what is the application filing requirement that Mrs. Frederick must meet?

Statutory interpretation of course starts with the words of a statute, which must be interpreted in the context of the Act as a whole. Where ambiguity persists after application of the standard tools of statutory construction, legislative history may be used to resolve any such ambiguity. We need not recite the legislative history of subsection (e), admitted by Mrs. Frederick as adverse to her case, by rote, because when the present tense of "submits" is coupled with the correct meaning of "such benefits," subsection (e) of section 101 is unambiguous.

Mrs. Frederick's interpretation of subsection (e), as made before the Veterans Court and repeated here, must

fail for three reasons, each tied to the text of the statute. Taken together, these statutory provisions demonstrate both that Mrs. Frederick is covered by subsection (e) and that she was required to file an application for DIC benefits, based on her new-found eligibility, within the one-year period between December 16, 2003, and December 16, 2004.

A

First, Mrs. Frederick cannot overcome the correct meaning of "submits an application for such benefits."

As the Veterans Court acknowledged, the statutory language "submits an application for such benefits" in the present tense connotes that a post-enactment application is necessary to secure DIC benefits based on remarriage after the age of 57. The Veterans Court, however, erred in only applying this prospective filing requirement to individuals who remarried after age 57 and who had never earlier applied for and received DIC benefits (group (b) above).

"Such benefits" necessarily refers to DIC benefits that became available for the first time by virtue of subsection (e) for individuals who remarried after the age of 57. "Such benefits" are the same whether in the hands of an individual in group (a) or group (b), as described above. An "application for such benefits" could only be submitted after "such benefits" came into existence. "Submits" therefore necessarily is forward-looking from the date of enactment of the Act. Such interpretation is consistent with the Dictionary Act, 1 U.S.C. § 1, which notes that "unless the context indicates otherwise[,] . . . words used in the present tense include the future as well as the present" but not the past tense, and Legislative Drafting Manuals, which prefer the present tense. *See* Senate Office of the Legislative Counsel, Legislative Drafting

Manual, § 103(a), p. 4 (1997); House Legislative Counsel's Manual on Drafting Style, HLC No. 104-1, § 102(c), p. 2, and § 351(f), p. 60 (1995). Although present tense verbs, like "submits," are not ordinarily thought to encompass the past, the Supreme Court in *Carr v. United States*, 130 S. Ct. 2229, 2236 n.5 (2010), noted that "there may be instances in which 'context' supports this sort of omnitemporality." The context here, however, leaves no room to interpret "submits an application for such benefits" to include an application submitted in 1970. Because the rights Mrs. Frederick seeks to vindicate did not exist in 1970, an application submitted then could not suffice to secure rights first created in 2004.

Mrs. Frederick would prefer us to interpret "such benefits" as limited to the DIC benefits to which she was entitled in 1970 upon the death of her veteran husband. But the words of the subsection themselves stand in her way. The phrase "such benefits" refers to the change in law made in subsection (a) of the statute and to remarriage "before the date of enactment of this Act and after the individual had attained the age of 57." And, in addition, the statute provides that "an individual shall be eligible for such benefits *by reason of such amendment* only if the individual submits an application for such benefits . . . " (emphasis added). Further, the one-year filing time has a specific beginning—the date of enactment of the statute.

There is only one reasonable way to read the relevant words in the statute. Coupled with the present tense of "submits," the statute must be construed to require an application to be submitted after the date of enactment of subsection (e) and "not later than the end of the one-year period beginning on the date of enactment of this Act." Indeed, the same "not later than" language creates limited filing periods for filing of reports and other obliga-

tions imposed on the Secretary in sections 601(a)(3) and 602(b) of the Act. Veterans Benefits Act of 2003, Pub. L. No. 108-183, 117 Stat. 2651, 2668-69. Thus, we must reject Mrs. Frederick's view that the application burden imposed on her in subsection (e) is satisfied by an application submitted in 1970.

B

Second, the interplay of subsections (e) and (f), thought by the Veterans Court to support its decision that subsection (e) sets a timing end date, strongly supports the Secretary's view that subsection(e) creates a window filing requirement. As noted above, the Veterans Court understood subsection (f) to replace a window filing requirement with the language enacted in subsections (f) and (e). Therefore, the Veterans Court reasoned that subsection (e) as enacted could not create a window filing requirement.

The Veterans Court overlooked the fact that subsection (f) is a technical correction, not intended to change the substantive law being corrected. In the Veterans Benefits Act of 2002, Congress provided that the remarriage after the age of 55 would not bar the furnishing of certain medical benefits to the surviving spouse of a veteran. In order to qualify for such benefits following remarriage after the age of 55, the statute conditioned availability of the medical benefits on the receipt by the Secretary of an application for such medical care "during the 1-year period ending on the effective date specified in subsection (c)." Veterans Benefits Act of 2002, Pub. L. No. 107-330, 116 Stat. 2820, 2821. Subsection (c), however, created an effective date of "60 days after the enactment of this Act." *Id.* The law thus created a window of time for receipt of applications to secure the new benefits. The problem with the language of the statute was that the

window, which lasted for one year, opened even before the legislation was enacted, and closed shortly thereafter. The 2002 law, corrected in 2003, thus created a filing window for securing medical benefits, but opened that window for a mere and almost meaningless 60 days. The object of the amendment made in subsection (f) was to extend the filing period for a longer period. The "during the 1-year period" language that was amended had created the short filing period, whereas the "before the end of the one-year period" simply lengthened the window filing period. Properly understood, the amendment made by subsection (f) did not replace a window filing requirement with an end date filing requirement; instead, the technical correction simply extended the previously flawed window filing time to a meaningful period.

## C

Third, section 701 of the Act underscores that the interplay of subsections (e) and (f) supports the Secretary. Section 701 makes clear, in the context of the statute as a whole, that there is no difference between the meaning of "during" and "before the end of." Section 701 sets forth time limitations on submission of certain claim information to the Secretary. Section 701(d)(1) states that the Secretary will readjudicate a claim if the request for readjudication is received "not later than the end of the one-year period that begins on the date of the enactment of this Act." This is the language used in subsection (e). Section 701(d)(4)(A), however, states that the Secretary is not obligated to readjudicate a claim that "is not submitted during the one-year period referred to in paragraph (1)." Section 701 thus shows that Congress did not assign different meanings to "not later than the end of" and "during" for purposes of filing time requirements. Consequently, section 701, together with subsections (e) and (f) of section 101, and coupled with the correct interpretation

of "submits an application for such benefits," requires that we interpret subsection (e) to create a filing window for an individual seeking to secure the DIC benefits afforded by the Act. In the words of the statute, the window's "beginning" is the date of enactment of the Act and its end is "not later than the one-year period beginning on the date of enactment." The application submission requirement applies to any individual seeking to secure the DIC eligibility created by subsection (e) of the Act, whether or not such an individual had previously enjoyed receipt of DIC benefits.

## VII

The points used by the Veterans Court to bolster its view that Mrs. Frederick is exempt from the Act cannot suffice to overcome subsection (e) as properly interpreted in Part VI above.

Contrary to the view of the Veterans Court, 38 U.S.C. § 5110(g) and 38 C.F.R. § 3.114 are not necessarily inconsistent with, and do not stand in the way of, the requirement that Mrs. Frederick was required to file an application in the specified window time period. Section 5110(g) permits the Secretary to set the effective date for an award or increase in amount of DIC benefit, where the award or increase in amount results from "any Act or administrative issue." But any such award or increase cannot be retroactive "more than one year from the date of application therefore or the date of administrative determination of entitlement, whichever is earlier." For purposes of this appeal, at least, the Secretary agrees that section 5110(g) "contemplates that the [Secretary] may identify and grant previously filed claims that benefit from a new law upon [his] own initiative, [but] it does not relieve claimants from having to file a claim for benefits under a new law when the [Secretary] does not do so."

Appellant Br. 26. The Secretary relies on *Wells v. Principi*, 3 Vet. App. 307, 309 (1992), in which the Veterans Court held that the Secretary is not obliged to seek out beneficiaries of new law. Where the Secretary has not independently granted a new benefit to a previously filed claim, as in Mrs. Frederick's case, the individual is obliged to apply for the newly-created benefit. The Veterans Court in *Wells*, and the Secretary in this case, point also to 38 U.S.C. § 5101(a), which requires that a claim must be filed in order for benefits to be paid. Because Mrs. Frederick's 1970 application for DIC cannot suffice to gain her eligibility that only arose in 2003, enforcing the application requirement of subsection (e) is not necessarily inconsistent with the authority of the Secretary to establish effective dates under section 5110(g). The pertinent regulation, 38 C.F.R. § 3.114 (a)(1) and (3), recognizes the difference between the case in which the DVA initiates a new effective date based on a change in law, and the case in which no such initiative is taken and the individual files an application.

The situation facing a DIC recipient who remarried before the Act and whose remarriage terminated (either by death or divorce) is no different from Mrs. Frederick's situation. The relevant statute, 38 U.S.C. § 5110(k), requires a claim to be filed for reinstatement of benefits upon annulment of a marriage, and 38 U.S.C. § 5110(l) sets the effective date for benefits arising from termination of a remarriage by death or divorce "if application therefore is received within one year from such termination." In short, the Veterans Court overlooked the requirement of an application in order to reclaim DIC benefits upon the termination of disqualifying remarriage. The Veterans Court thus erred in thinking that a person in the terminated remarriage situation has no duty to apply, and hence Mrs. Frederick should have no duty to

apply. As the Veterans Court noted, it is true that the Secretary treats informal requests by individuals to reinstate DIC benefits as sufficient application under statute. Indeed, in this case the Regional Office accepted Mrs. Frederick's informal November 8, 2007, letter as an application to gain the DIC rights afforded by the Act. The sufficiency of Mrs. Frederick's "application" has never been challenged by the Secretary—only its timeliness.

## VIII

For the reasons stated above, subsection (e) must be interpreted to apply to any individual seeking to secure the specific DIC benefits newly afforded thereby, and any such individual is required to have applied for such benefits after the date of enactment of the Act and before the end of the one-year period thereafter. Mrs. Frederick's view of the statute cannot prevail. At the least, the factors we have cited cast doubt on Mrs. Frederick's view of subsection (e) and would therefore create ambiguity as to which party has the better interpretative argument. Mrs. Frederick understandably does not wish to be drawn into ambiguity, for there she must confront the legislative history she recognizes is adverse and upon which the Secretary could rely. *See Staub v. Office of Pers. Mgmt.*, 927 F.2d 571, 573 (Fed. Cir. 1991) ("Since both parties claim victory on the face of the statute, we have no reluctance to examine the legislative history [of the statute].") We need not pursue the ambiguity point further, for our interpretation of the statute leaves no ambiguity as to what Congress meant by subsection (e).

In the end, with no sustainable statutory interpretation to assert, and no desire to find ambiguity in the statute, the only way Mrs. Frederick could prevail is on the ground found by the Veterans Court: that she is

simply not covered by subsection (e). But that door, too, is closed to Mrs. Frederick.

For the reasons stated above, we must reverse the decision of the Veterans Court, and remand with instructions to dismiss Mrs. Frederick's claim as untimely filed.

## REVERSED AND REMANDED

### COSTS

Each party shall bear its own costs.

# United States Court of Appeals
# for the Federal Circuit

---

**RUTH HILL FREDERICK,**
*Claimant-Appellee,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellant.*

---

2011-7146

---

Appeal from the United States Court of Appeals for Veterans Claims in case No. 09-433.

---

REYNA, *Circuit Judge*, dissenting

I do not believe that the United States Court of Appeals for Veterans Claims ("Veterans Court") misinterpreted § 101(e) of the Veterans Benefits Act of 2003 ("Act") by restoring dependency and indemnity compensation ("DIC") benefits to surviving spouses of veterans who remarry after age 57 and whose application was submitted before December 16, 2004. The Veterans Court, specialists in this area of law, properly held that Mrs. Frederick met all of the statutory criteria and awarded her DIC benefits as the remarried widow of a World War II veteran. The majority decision strips that award from Mrs. Frederick and thousands of others. I respectfully dissent because the plain meaning of the statute requires

an interpretation favoring Mrs. Frederick; even if ambiguity can be shown, canons of construction unique to veterans law require that we resolve any remaining doubt in her favor.

The relevant facts are uncontested and underscore the merit of Mrs. Frederick's claim under the Act. Mrs. Frederick was married in 1961 to Mr. Fred T. Hill, a World War II veteran who passed away with a 100% disability rating in 1970 and she was at that time a "surviving spouse" under the Act. *See* § 101(a). Mrs. Frederick submitted an application for DIC benefits to the Veterans Administration on June 4, 1970, shortly after the death of her husband. She received DIC benefits from the time of her husband's death in 1970 until 1986, when the benefits were terminated due to her marriage to Mr. Spencer Frederick.

There is no question that "but for having remarried [she] would [have remained] eligible for benefits" under the Act. *See* § 101(e). Mrs. Frederick was born on January 4, 1929, and married Mr. Frederick in December of 1986 so at the time of her remarriage, she "had attained age 57" as required by the Act. *See id.* Given her 1970 application for DIC benefits, her DIC claim was received by the Secretary of Veterans Affairs "not later than the end of the one-year period beginning on the date of the enactment of th[e] Act," to wit, before December 16, 2004. *See id.* Accordingly, Mrs. Frederick meets every eligibility requirement on the face of the Act, §§ 101(a)[1] and (e),[2] and should have been receiving DIC benefits.

---

[1]    "(a) The remarriage after age 57 of the surviving spouse of a veteran shall not bar the furnishing of benefits specified in paragraph (5) to such person as the surviving spouse of the veteran."

As the Veterans Court determined, the plain meaning of the statute provides only an end date—"not later than the end of the one-year period beginning on the date of enactment of this Act"—by which an application for DIC benefits must have been submitted. *Frederick v. Shinseki*, 24 Vet. App. 335, 338 (2011); § 101(e). I agree that the Act's clear language creates a final deadline, as opposed to a bounded period, for submission of a DIC benefits application. Mrs. Frederick's initial 1970 application for DIC benefits precedes the Act's critical date by more than three decades. It was more than timely filed.

The majority holds that a second application for DIC benefits should have been filed by Mrs. Frederick during a narrow one-year window, between December 16, 2003 and December 16, 2004; that is, Congress created a bounded period of one year during which applications under the Act should have been filed. Yet, the Act neither prescribes filing "during," "within," or "between" two dates, nor requires "a reapplication," "a new application," or "another application." In clear and plain language, the Act provides only that "*an application*" must be submitted "*not later than*" December 16, 2004. The Veterans Court was correct that this clear language should control.

The majority works hard to establish that because the word "submits" is drafted in the present tense, it indicates

---

[2] "(e) APPLICATION FOR BENEFITS.— In the case of an individual who but for having remarried would be eligible for benefits under title 38, United States Code, by reason of the amendment made by subsection (a), and whose remarriage was before the date of enactment of this Act and after the individual had attained age 57, the individual shall be eligible for such benefits by reason of such amendment only if the individual submits an application for such benefits to the Secretary of Veterans affairs not later than the end of the one-year period beginning on the date of enactment of this Act."

a fully prospective requirement, i.e., the filing of a new application for DIC benefits. *See* Maj. Op. at 12-13. ("Submits . . . necessarily is forward-looking from the date of enactment of the Act."). But the Supreme Court has recognized that while not the typical understanding in other circumstances, a word drafted in the present tense may also be used to encompass past events in "instances in which 'context' supports this sort of omnitemporality." *Carr v. United States*, 130 S. Ct. 2229, 2236 n.5 (2010). Indeed, English-language scholars know well that the present tense may refer to the past, a usage grammarians call the "historical present." *See* R. Pence and D. Emery, *A Grammar of Present-Day English*, 262-63 (2d ed. 1963). The historical present uses the present tense commonly in narratives to express immediacy. *Id.* Furthermore, the present tense may be used when time is meant to remain indefinite.[3] *Id.* In this light, I believe that Congress used the present tense word "submits" precisely because it did not wish to limit § 101(e)'s reach to either past or future applications. *See Coal. for Clean Air v. U.S. Envtl. Prot. Agency*, 971 F.2d 219, 224-25 (9th Cir. 1992) ("The present tense is commonly used to refer to past, present, and future all at the same time."); *In re Stratford of Tex., Inc.*,

---

[3]    The majority acknowledges that Congressional drafting manuals prefer the present tense. Maj. Op. at 12. For example, Congress drafted 42 U.S.C. § 7413(c)(2) using the present tense: "any person who knowingly—(A) *makes* any false material statement. . . . (B) *fails* to notify or report as required under this Act: . . ." 42 U.S.C. § 7413(c)(2) (emphasis added). The Ninth Circuit observed that in this instance "Congress uses the present tense to establish criminal liability . . . . Yet clearly the 1990 Amendments do not forgive criminal violations that occurred prior to the Amendments just because Congress speaks in the present tense." *Coal. for Clean Air v. U.S. Envtl. Prot. Agency*, 971 F.2d 219, 225 (9th Cir. 1992).

635 F.2d 365, 369 (5th Cir. 1981) ("[T]he present tense of a verb may sometimes refer to the past and to the future as well as to the present."). Such "omnitemporality" makes sense in this context, signaling a congressional intent to recognize that eligibility may be retained by anyone who filed prior to the date of enactment, or within a year thereafter. When "submits an application" is added to the express deadline language "not later than," the meaning is irrefutably clear—only one application for DIC benefits is required, filed any time before December 16, 2004.

We must assume when the words of a statute are irrefutably clear that Congress said what it meant and meant what it said, thereby ending our judicial inquiry. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992); *United States v. LaBonte*, 520 U.S. 751, 757 (1997). The legislative history, no matter how creatively spun, cannot trump the plain and unambiguous language of the statute. *See Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994) ("There are, we recognize, contrary indications in the statute's legislative history. But we do not resort to legislative history to cloud a statutory text that is clear."); *Van Wersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144, 1152 (Fed. Cir. 1999) ("[W]e are not prepared to allow the extant legislative history . . . to trump the irrefutably plain language that emerged when Congress actually took pen to paper.").

The Veterans Court found, and I agree, that the legislative history here is, "at best, ambiguous." *Frederick*, 24 Vet. App. at 342. The majority cites a single legislative history quotation that remarried spouses "would have one year to apply for the reinstatement of these benefits," 149 Cong. Rec. S15,133-01 (daily ed. Nov. 19, 2003). Aside that this language also does not create a defined one year period for filing of applications, this limitation was not

included in the Act as passed.  Maj. Op. at 4-5.  This inchoate idea—a bounded window for reinstatement—was rejected by Congress, as evidenced that the Act was passed containing language that goes the other way.  This case is a good example of why we should avoid reliance on "murky, ambiguous, and contradictory" legislative history, especially when it defies the statute's plain meaning and defeats its remedial purpose.  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005); *see also Ratzlaf*, 510 U.S. at 147-48; *Van Wersch*, 197 F.3d at 1152.

Even if the statute did admit of ambiguity, we must be loathe to construe § 101(e) against Mrs. Frederick.  The Act is a remedial statute intended to broaden eligibility for DIC benefits.  The veterans benefits system operates in a uniquely pro-claimant manner so we must do justice, ensuring that veterans and their families are treated fairly. *See  Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006); *Hodge v. West*, 155 F.3d 1356, 1362-64 (Fed. Cir. 1998).  Indeed, the Supreme Court has held that any interpretive doubt be resolved in the veteran's favor. *Brown v. Gardner*, 513 U.S. 115, 117-18 (1994); *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980); *Fishgold v. Sullivan Dryrock & Repair Corp.*, 328 U.S. 275, 285 (1946); *see also Sursely v. Peake*, 551 F.3d 1351, 1355 (Fed. Cir. 2009).  The Veterans Court faithfully applied this important principle, and I would *affirm*.