Citation Nr: 1513866 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 08-02 422 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUE

Entitlement to a total disability rating based on unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Robert V. Chisholm


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

C. Bruce, Counsel

INTRODUCTION

The Veteran served on active duty from February 1969 to February 1971.

This matter comes before the Board of Veterans' Appeals (the Board) on appeal from a May 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma. By that rating action, the RO, in-part, denied the Veteran's claim of entitlement to TDIU. The Veteran appealed this rating action to the Board.

In January 2010, the Veteran testified at a video conference hearing before a Veterans Law Judge (VLJ). A transcript of the hearing has been associated with the Veteran's VA claims folder. The previously-assigned VLJ who conducted the January 2010 hearing has retired from the Board. In January 2015, the Board sent the appellant a letter offering her another hearing before a different VLJ. See 38 U.S.C.A. § 7107(c) (West 2002); 38 C.F.R. § 20.707 (2013) (the Board member who conducts the hearing will participate in making the final determination of the claim). The appellant failed to respond and as such the Board will consider the case on the evidence of record.

In March 2010, the Board denied the Veteran's claim. The Veteran appealed the Board's denial to the United States Court of Appeals for Veterans Claims (Court). In an August 2011 memorandum decision, the Court and remanded the case to the Board for readjudication. In February 2012, the Board remanded the Veteran's claim to the RO for additional development. The Board once again denied the Veteran's claim in December 2012. The Veteran appealed the Board's denial to the Court. In a June 2013 Order, the Court granted a Joint Motion to Remand of the Parties, the VA Secretary and the Veteran, and remanded the case to the Board for readjudication consistent with the Motion. In a January 2014 decision the Board once again denied the claim. In an August 2014 Order, the Court again granted a Joint Motion to Remand of the Parties, the VA Secretary and the Veteran, and remanded the case to the Board for readjudication consistent with the Motion. The appeal is once again before the Board.

FINDING OF FACT

With resolution of the doubt in the Veteran's favor, the competent and credible evidence approximates findings that the Veteran's service-connected disabilities are so severe that they preclude him from obtaining and maintaining substantially gainful employment, from August 15, 2003.


CONCLUSION OF LAW

The criteria for a TDIU are met from August 15, 2003. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 4.16.


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board regrets that it took so long to finally resolve this appeal; the issues on appeal have been pending for around ten years. Rather, this case has ping-ponged between VA and the Court of Appeals for Veterans Claims numerous times. However, the Veteran will wait no longer. Cf. Coburn v. Nicholson, 19 Vet. App. 427, 434 (2006), (Lance, J., dissenting) (noting "the hamster-wheel reputation of veterans law"). 

After a review of all the evidence of record, the Board finds that the evidence is at least in equipoise as to whether the Veteran met the criteria for a TDIU, starting in 2003. The Veteran noted in his VA Form 21-8940, dated in June 2005 and submitted with the VA Form 21-8940 of the same date, that he had worked for Woods Precision as a machinist from 1992 to 2002. He indicated that at most he had made $40,000 per year working in that job. However, the Board notes that the Veteran's representative at the time submitted a VA Form 21-4192 from a former employer, dated in June 2005, which noted that the Veteran had worked from February 7, 1997 to August 14, 2003. This form indicated that the Veteran had made approximately $24,000 in the year preceding the last date of employment while working 40 hours a week and noted that termination was a result of being laid off due to lack of work. It was unclear from the form the name of the Veteran's employer, but it was presumably Woods Precision.

The Veteran provided another VA Form 21-8940 dated in February 2007, which noted that he had worked from 1980 to 2001 as an oil field worker for Dahl and Patrick Oil Company and the most he had made in a year was $24, 000. In addition, he provided another VA Form 21-4192, dated in February 2007, from another employer, Dahl and Patrick Oil Company, which noted the Veteran had worked there from March 10, 1980 to December 7, 2001 and termination was based on "hearing, hands, not getting along with people". It was noted the Veteran made $24,000 in the year prior to his last date of employment and worked 40 hours per week. 

A VA examination dated January 2004 noted that the Veteran, since service separation in 1971, had worked for 25 years as a farmer during which his relationship with his supervisor and his co-workers was good and 24 years as an oil field pumper and machinist during which his relationship with his supervisor and co-workers was good. Those two occupations appeared to have overlapped. In addition, the Board is a bit confused as to the nature of his employment between 1997 and 2001, as there are two different companies both stating that the Veteran worked 40 hours a week during this time period. 

The Veteran underwent a private vocational survey in February 2015. The examiner, after talking with the Veteran and thoroughly reviewing the Veteran's file, determined that the Veteran's service-connected disabilities have prevented substantially gainful employment since December 7, 2001, the date at which he last worked full time, as indicated by his former employer, Dahl and Patrick Oil Company, on the February 2007 VA Form 21-4192. The examiner noted that the employer indicated the Veteran stopped working due to his hands, his hearing, and his inability to get along with people. The examiner found that the Veteran's responses to his questions confirmed significant limits on successfully interacting with others in terms of maintaining mental focus as a result of his service-connected disabilities. However, the examiner did not address the June 2005 VA Form 21-4192, which was presumably supplied by Woods Precision, and indicated that the Veteran's last day of work was August 14, 2003. Moreover, the examiner did not explain the discrepancies between what his report found and what the Veteran reported to the VA examiner in 2004. 

With regard to the issue of TDIU, under 38 C.F.R. § 3.340(a)(1), total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. Total disability may or may not be permanent. If there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16. In this case, the Veteran is service connected for posttraumatic stress disorder (PTSD) (50 percent disabling) and tinnitus (10 percent disabling), both due to combat; and has noncompensable ratings for mild scarring due to jungle rot on the dorsum of the bilateral hands, and bilateral hearing loss. Because the Veteran's PTSD and tinnitus were both incurred in combat, he meets the schedular criteria for TDIU from June 8, 2005. 38 C.F.R. §§ 3.340, 3.341, 4.16(a)(4) (2014). As the Veteran meets the schedular criteria for a TDIU and given that he was determined to be unemployed during that time, the Veteran is entitled to a TDIU from June 8, 2005 on a schedular basis.

The Board finds that the Veteran has been unemployed, however, from August 15, 2003, prior to the date when the Veteran met the requirement for TDIU on a schedular basis. In this regard, the Veteran was service connected for PTSD (30 percent disabling) and mild scarring due to jungle rot on the dorsum of the bilateral hands (noncompensable) prior to June 8, 2005. Accordingly, the Veteran's claim for TDIU prior to June 8, 2005, must be considered on an extraschedular basis. Ultimately, though, all Veterans who are shown to be unable to secure and follow a substantially gainful occupation by reason of service-connected disability shall be rated totally disabled. 38 C.F.R. § 4.16(b).

In Bowling v. Principi, 15 Vet. App. 1, 10 (2001), the United States Court of Appeals for Veterans Claims (Court), citing its decision in Floyd v. Brown, 9 Vet. App. 88, 94-97 (1995), held that the Board cannot award a TDIU under 38 C.F.R. § 4.16(b) in the first instance because that regulation requires that the RO first submit the claim to the Director of the Compensation and Pension Service for extraschedular consideration. Indeed, in Bowling, the Court reversed the Board only to the extent that the Board concluded that the Veteran "was ineligible for 4.16(b)-TDIU consideration." Id. 
 
However, this Board member finds that Bowling and Floyd's prohibition against granting an extraschedular TDIU in the first instance has been implicitly overruled through the issuance of the Court's decisions in Thun and Anderson, as well as the Federal Circuit's affirmance of Thun and its decisions in Disabled Am. Veterans v. Sec'y of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003) and Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). It simply defies logic and the intent of the law that the Board is able to review de novo the determinations of the Direction of Compensation, yet must send it to him in the first instance, even when the Board finds that the evidence of record already shows the Veteran is incapable of obtaining or engaging in substantially gainful employment. 
 
Moreover, in a recent precedential decision, one of the Judges of the Court, in a concurring opinion, disagreed with the holding in Bowling and, cited Bethea v. Derwinski, 2 Vet. App. 252, 254 (1992), in determining that the Board had the authority to award extraschedular TDIU in the first instance. See Wages v. McDonald, No. 13-2694, 2015 WL 293616, at *6 (Jan. 23, 2015) (Kasold, J., concurring). The Wages majority separately noted that, "[i]n sum, the Secretary's contention that § 4.16(b) vests an extraschedular TDIU award solely within the nonreviewable discretion of the Director conflicts with the statutory mandate that the Board provide the final decisions on section 511(a) benefits determinations. Accordingly, this contention is rejected." Id. at *5. (emphasis added). Finally, the majority, in a footnote, observed the current absurdity inherent in the § 4.16(b) process, noting that "Although it is not clear how the Secretary's approach of inserting the Director into the regulatory process while refusing to recognize the Director as the agency of original jurisdiction fits within the statutory scheme for adjudicating VA benefits claims, see, e.g., 38 U.S.C. § 7105 (providing for Board review of decisions by an agency of original jurisdiction), we need not further address this issue in the absence of a direct challenge to that process.") Id. at *5 fn 4 (emphasis added). 

Therefore, given this Board member's reasoning as outlined above, it will not make the Veteran wait for any further processing by VA. See Delisio v. Shinseki, 25 Vet. App. 45, 63 (2011) (Lance, J., concurring) ("There is an unfortunate-and not entirely unfounded-belief that veterans law is becoming too complex for the thousands of regional office adjudicators that must apply the rules on the front lines in over a million cases per year."); cf. Coburn v. Nicholson, 19 Vet. App. 427, 434 (2006) (Lance, J., dissenting) (noting that an unnecessary remand "perpetuates the hamster-wheel reputation of veterans law").

As the record indicates that the Veteran has been unemployed since August 15, 2003, the Board finds that the Veteran is entitled to a TDIU on an extraschedular basis from August 15, 2003. 

The Board notes that the Veteran appears to be claiming that he is entitled to TDIU from December 7, 2001, the date which the February 2007 VA Form 21-4192, stated he was unable to work as a result of his hand, hearing, and inability to get along with others. However, the Board finds that the previous June 2005 VA Form 21-4192 indicated that the Veteran was able to work until August 14, 2003. Although the Veteran was noted to only be making approximately $24,000 annual salary at the time, this exceeds the poverty threshold. 

Moreover, there is no indication that the Veteran was only marginally employed as a result of his service-connected disabilities. In this regard, the Board notes the January 2004 VA examination that stated that the Veteran had worked both as a farmer and an oil pumper for 24-25 years and had a good relationship with his co-workers and supervisors. There is no indication that he was working for his family's business or in any kind of protected workshop. Rather, the January 2004 VA examiner noted that although the Veteran was not working, "he has not been working for 12 years because he was laid off" and the [l]ast job he worked as a[n] oil field pumper for 12 years." In addition, the Veteran reported to the examiner that "[t]he type of work the [Veteran] was doing was no longer needed due to loss of contracts." Although the Veteran might have not been making a significant amount of money between 2001 and 2003, it appears that it was a result of a lack of work, and not based on any service-connected disability. 

Finally, the Board notes that this decision should represent, as best as can be determined, a full grant of what the Veteran is seeking. See February 24, 2003 Argument Letter ("[P]lease grant entitlement to TDIU at this time" and "grant entitlement to TDIU at this time.") To this end, the Board notes that the Veteran's counsel has expertly and specifically articulated why entitlement to a TDIU rating is warranted; has also developed additional evidence supporting the claim. For this, Mr. Chisholm is to be commended. 

Thus, given the record before it, the Board trusts that both the Veteran and his counsel are satisfied with this decision, such that this decision will end the current appeal. See Massie v. Shinseki, 25 Vet. App. 123, 131 (2011) ("[T]he Board ... was entitled to assume that the arguments presented by [the appellant] were limited for whatever reason under the advice of counsel and that those were the theories upon which he intended to rely."), aff'd, 724 F.3d 1325 (Fed. Cir. 2013); Mason v. Shinseki, 25 Vet. App. 83, 95 (2011) (holding that "the Court will not invent an argument for a represented party who had ample opportunity and resources to make that same argument, but, for whatever reason-be it strategy, oversight, or something in between-did not do so"); Robinson v. Peake, 21 Vet. App. 545, 554 (2008) ("The presence of [an] attorney throughout the appeals process before the Agency is a significant factor . . . [w]e presume that [the] attorney, an experienced attorney in veteran's law, says what he means and means what he says"), aff'd sub nom. Robinson v. Shinseki, 557 F.3d 1355 (Fed. Cir. 2009).









ORDER

A TDIU, from August 15, 2003, is granted.



____________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs